# Staunton

## MULLINS V. COMMONWEALTH.

### September 11, 1913.

### Absent, Keith, P.

1. INDICTMENTS—*Sale of Liquor Without License—Allegation of Time—Surplusage.*—An indictment for unlawfully selling liquor without a license sufficiently charges the time of the sale when it charges that it was made "on the ........ day of ............ in the year one thousand, nine hundred and ........ and" within the last two years. The words quoted may be treated as surplusage, and what remains is a sufficient allegation of the time of the sale.

2. CRIMINAL LAW—*Plea—Demurrer and Replication Thereto—Effect.*—To a plea in abatement filed by a defendant in a criminal prosecution, the attorney for the Commonwealth may demur or reply, but he has no right to do both. If, after his demurrer is overruled, he replies to the plea, the demurrer will be treated as waived or withdrawn, although the prisoner objected to the filing of the replication and excepted to the ruling of the court overruling his objection.

3. GRAND JURY—*Presence of Attorney for Commonwealth.*—While it is the policy of the statute of this State (Code, section 3988) to keep the grand jury independent of all outside interference, and free and untrameled in their deliberations, and it is highly reprehensible for any attorney for the Commonwealth to violate in any degree either the terms or the policy of the statute, an indictment will not be quashed because the attorney for the Commonwealth appeared before the grand jury during their deliberation when not sworn as a witness, where it appears from the evidence that he did not advise them to find the indictment, did not know of their finding until the presentment was made, and was not in the room when they had under consideration or deliberation the indictment or the presentment upon which the indictment was found.

60

4. INTOXICATING LIQUORS—*Indictment for Selling Whiskey—Proof of Sale of "Corn Liquor."*—An indictment for illegally selling without license "whiskey," brandy, wine, beer, malt liquors, and mixtures thereof" is sufficiently sustained by proof of such sale of "corn liquor" in the absence of any adverse testimony. It is a matter of common knowledge that the term "corn whiskey" and "corn liquor" are used interchangeably, alternately and indifferently, and, upon proof of a sale of "corn liquor," the jury have the right to assume that it is of that class which is alcoholic or spiritous, distilled from corn, and comes within the terms of the statute prohibiting the sale of whiskey.

5. COURTS—*Jurisdiction—Violation of Revenue Laws—Sale of Liquor in Local Option Territory—Dickenson County.*—An indictment for unlawfully selling ardent spirits in Dickenson county, without a license so to do, is an offense against the revenue laws of the State of which the circuit court of said county has concurrent jurisdiction with the justices of the peace of said county, although no license for such sale could be granted in said county.

Error to a judgment of the Circuit Court of Dickenson county.

*Affirmed.*

The opinion states the case.

*Sutherland & Sutherland,* for the plaintiff in error.

*Samuel W. Williams, Attorney General,* for the Commonwealth.

CARDWELL, J., delivered the opinion of the court.

The refusal of the trial court to sustain the demurrer to the indictment is assigned as error.

The indictment was found and returned into court on July 16, 1912, and sets forth "that Melvin Mullins on the ......day of.............., in the year one thousand nine hundred and..........and within the last two years in said county, did unlawfully sell by retail whiskey, brandy, wine, beer, malt liquors and mixtures thereof

without a license so to do, as required by law, against the peace and dignity of the Commonwealth."

It is contended on behalf of the accused that the averment in the indictment as to the time when the offense was committed is meaningless, and that it does not charge the date of the sale nor such facts as show that the sale was made within two years prior to the indictment, the statutory period for the prosecution of such offenses.

In the recent case of *Shiflett* v. *Commonwealth,* 114 Va. 876, 77 S. E. 606, the charge in the indictment was "that Marcus Shiflett, within twelve months, on the last preceding 191.., in said county, did unlawfully sell ardent spirits without having obtained license to do so," &c., and the opinion of the court by Buchanan, J., citing ample authority for the ruling, holds that "words in an indictment which are meaningless may be treated as surplusage and rejected if the indictment is thereby made sensible. Courts of justice are disposed to treat as surplusage all erroneous and improper averments in complaints and indictments where the residue of the allegations sets out the offense charged in technical language and with substantial certainty and precision; that after rejecting the words 'on the last preceding 191..,' following the words 'within twelve months,' as meaningless, the indictment stated that the grand jury attending the circuit court of Greene county, at its December term, 1912, upon their oath, present that Marcus Shiflett within twelve months, . . . in the said county, did unlawfully sell ardent spirits without having a license to do so, which were apt and sufficient words to show that the offense charged was committed within the statutory period, and, therefore, the demurrer to the indictment was properly overruled."

So, in the case now before us, after rejecting as surplusage, and because meaningless, the words in the indictment, "on the......day of............in the year one

thousand nine hundred and.........and," the residue of
the allegations, in apt and sufficient words, set out the of-
fense charged against the accused "in technical language
and with substantial certainty and precision," showing
that the offense charged was committed within the statu-
tory period, and the demurrer to the indictment was rightly
overruled.

When the case was called for trial the accused, Melvin
Mullins, tendered his plea in abatement to the indictment
to the effect that "the grand jury that found and returned
the indictment was an illegal body, and the deliberations
of said body in returning said indictment was contrary to
law for this, to-wit: W. G. L. Long, the attorney for the
Commonwealth, after the grand jury was sworn and re-
tired to their room to deliberate on the said indictment,
went before the said grand jury during their deliberation,
and the said attorney for the Commonwealth was not at
the time he went before the said grand jury, and while
they were deliberating on this indictment, duly sworn to
testify as a witness before the said grand jury, and by
reason of the illegal conduct of the said attorney for the
Commonwealth and of the said grand jury this defendant
has been injured and prejudiced, and said indictment re-
turned . . . Wherefore, for the reason that the at-
torney for the Commonwealth was before said grand jury
at the time and under the circumstances aforesaid, he
prays judgment of said indictment that the same be
quashed."

The attorney for the Commonwealth demurred to said
plea and the accused joined in the demurrer, which the
court overruled; and thereupon the attorney for the Com-
monwealth offered to reply to the said plea, to which the
accused objected, because he (the attorney for the Com-
monwealth) had demurred, and he was only allowed one
answer to said plea; but the court overruled said objec-

tion and permitted the attorney for the Commonwealth to reply to the plea, to which action and ruling of the court the accused then and there excepted; whereupon the accused joined in said replication and issue was joined thereon, which issue was, by consent of parties, tried by the court without the intervention of a jury, and to sustain in his behalf the issue on the plea the accused called as his witness the attorney for the Commonwealth, who, after being sworn, testified as follows:

"After the grand jury was sworn and retired to their room for deliberation, I went in and was in the grand jury room at the July term of this court, the term at which this indictment was found, several times. I was called in there by the grand jury to consult and was not called as a witness; the grand jury was in session, and it was during their deliberation when I was in there.

"I did not advise the grand jury to return this indictment against the defendant, and did not know of it until the presentment was made, and was not in the room when the jury had under consideration or deliberation of said indictment or the presentment upon which said indictment was found."

This being all the evidence introduced in support of the said plea, the court, finding that the evidence did not sustain the plea, overruled it and gave judgment *respondeat ouster,* to which ruling the accused then and there excepted.

The contention of the accused is that when the demurrer to the plea in abatement was overruled, judgment should have been entered for the accused; that the Commonwealth's Attorney should not have been permitted to have two answers to the same plea, and having demurred to the plea, he was not entitled to reply to it.

There is no merit in this contention. It is true that while the attorney for the Commonwealth had the right

to demur or reply to the plea, he had no right to do both; but as said in the opinion of this court in *Ches., &c., R. Co.* v. *Bank,* 92 Va. 495, 23 S. E. 935, 44 L. R. A. 449, "Although the record does not show that the demurrer was withdrawn, the court and parties must have so considered it, otherwise the replication could not have been filed and a trial had upon the issue of fact raised by it. The demurrer having been treated in the trial court as waived or withdrawn, it must be so considered here."

We are of opinion that the trial court did not err in overruling the accused's plea in abatement or in refusing to quash the indictment.

Section 3988 of the Code of 1904 does declare it unlawful for any attorney for the Commonwealth to go before any grand jury during their deliberations, except when duly sworn to testify as a witness, with the qualification that "he may advise the foreman of the grand jury or any members thereof in relation to the discharge of their duties." It is unquestionably the policy of the statute, as has been the practice in this jurisdiction, to keep the grand jury independent of all outside interference, free and untrammeled in their deliberations, and while it is highly reprehensible for any attorney for the Commonwealth to violate in any degree either the terms or the policy of the statute, it would be a strained construction of it, upon the facts in this case, to say that there has been such a disregard thereof as was or might have been injurious and prejudicial to the accused and calling for a dismissal of the indictment against him, upon the ground that it was returned by the grand jury because the attorney for the Commonwealth went before the grand jury while they were in session at the July term of the court, 1912, at which term this indictment was found and returned into court. It will be observed that the attorney for the Commonwealth, introduced as a witness for the accused, testified: "I did not advise

the grand jury to return this indictment against the defendant, and did not know of it until the presentment was made, and was not in the room when the jury had under consideration or deliberation of said indictment or the presentment upon which said indictment was found."

The remaining assignment of error requiring consideration relates to the ruling of the trial court refusing to set aside the verdict of the jury because the same was without evidence to support it, and its refusal to dismiss the case because the court was without jurisdiction to try it.

The only evidence in the case is that given by A. K. Lambert, introduced as a witness on behalf of the Commonwealth, who testified that in June, 1911, he was coming from McClure and wanted some liquor, and he came to a place on Crane's Nest, in Dickenson county, and asked a woman, whom he did not know, where the man of the house was, and she said he was up at the barn, which was about fifty yards from the house. "I went up there and the defendant, Melvin Mullins, was up there. I knew him well. I told him I wanted a fruit jar and he said perhaps he could get one at the house. We went to the house and we went into the main room, where I stopped, and he and his wife went into the kitchen and he came back in a few moments. Then I went into the kitchen and on the table set a half gallon or liquor. I laid down $2.20, and picked up the can and left. The can had corn liquor in it. . . . I saw the defendant, his wife and some others there; I don't know who they were; I took it they were their children. . . . I do not recall seeing any grown people there except the defendant and his wife. I did not stay but a few minutes, and was never there before or after I left the $2.00 there for the liquor and the 20 cents for the can; I do not know who got the money, or whether anyone got it or not. I did not tell anyone where I put the money, but it was on the table in the kitchen where I found the liquor."

The only point made as to the insufficiency of this evidence to warrant the jury in finding the accused guilty of selling "whiskey, brandy, wine, beer, malt liquors and mixtures thereof without a license so to do, as required by law," is that proof of a sale of "corn liquor" is not a proof of a sale of "whiskey," &c., in violation of the statute. To sustain this contention two cases are cited: *Barker* v. *State,* 117 Ga. 428, 43 S. E. 744, and *Donithan* v. *Commonwealth,* 109 Va. 845, 64 S. E. 1050. In the first named case the court was construing a certain section of the Penal Code of Georgia, and merely held that, as the sale of corn whiskey was not prohibited by that section under which the defendant was indicted, the verdict of the jury finding him guilty of a sale of corn whiskey should have been set aside.

In *Donithan's Case, supra,* the indictment was for the unlawful sale of "spiritous and malt liquors, whiskey, brandy, wine, ale, beer or mixtures thereof," and the ruling of this court was that as cider is not a spiritous liquor and does not belong to any of the other classes enumerated in the statute, therefore the verdict of the jury finding the defendant guilty upon proof only of the sale of cider which produced intoxication could not be sustained.

In the case at bar the witness speaks of the article purchased by him of the accused as "corn liquor." The term "liquor" in its limited sense and in its more common application implies spiritous fluids, whether fermented or distilled, such as brandy, whiskey, gin, beer and wine, and the like fluids in great variety; so that where a witness in describing what liquor had been sold uniformly describes it merely as "liquor" it would be proper for the jury to assume that he was speaking of that class of liquor specifically referred to in the second definition given by Webster, viz., 'alcoholic or spiritous fluid either distilled or fermented; as brandy, wine, whiskey, beer," etc. 5 W. & P. 4181-82, and authorities there cited.

Whiskey is a spirit distilled from grain, barley maize, (corn), wheat, rye, etc., and the use of the term "whiskey" in an indictment charging the defendant with selling intoxicating liquor, to-wit, one quart of whiskey, is sufficient to show the sale of fermented or distilled liquor, within the meaning of a statute prohibiting the sale of such liquor. 5 W. & P. 7445, and authorities cited.

In *State* v. *Williamson*, 21 Mo. 498, the opinion of the court says: "The court will take judicial notice that *whiskey* is a spirit distilled from corn." And in *Aston* v. *State* (Texas Crim. 1899), 49 S. W. 385, the court said: "It is common information that *whiskey* is a spiritous liquor distilled from corn and vegetables, and is highly intoxicating."

In *Com.* v. *White,* 10 Met. (Mass.) 14, the indictment was under the Rev. Statutes of Massachusetts and charged the defendant with selling "one gill of spiritous liquor," etc. The proof was that the liquor sold was in the form of gin and brandy mixed with sugar and water, so as to make what was called *toddy* or *sling,* the objection taken being that the proof did not show a sale of spiritous liquor, but only a sale of mixed liquor, part of which was spiritous. *Held:* That the objection was not well taken, on the ground that, although the article sold might have been properly described as a mixed liquor, part of which was spiritous, it was also well described as spiritous liquor, and the proof adduced was sufficient to sustain a conviction for a violation of the statute providing that "if any person shall sell any wine or spiritous liquor or any mixed liquor, part of which is spiritous  .  .  .  without being duly licensed  .  .  .  he shall forfeit for each offense twenty dollars." See also *Com.* v. *Morgan,* 149 Mass. 314, 21 N. E. 369.

In *State* v. *Brittain,* 89 N. C. 474, the opinion of the court says: "Most generally the term 'liquors' implies

spiritous liquor," and it was, therefore, held that proof that the defendant sold liquors is sufficient to show, in the absence of adverse testimony, that he sold spiritous liquors.

It is a matter of common knowledge that "corn whiskey" and "corn liquor," or "rye liquor" and "rye whiskey," are terms interchangeably, alternately and indifferently used, respectively, to indicate the grain out of which the liquor spoken of was distilled; so that when the witness in this case spoke uniformly of the contents of the can he purchased of the accused as "corn liquor" it was entirely proper for the jury to assume that he was speaking of that class of liquor which is alcoholic or spiritous, distilled from corn, and which comes within the terms of the statute prohibiting the sale of whiskey, etc., without being duly licensed to do so, and it was not error in the court to refuse to set aside the jury's verdict finding the accused guilty as charged in the indictment and imposing upon him the punishment authorized by the statute.

The ground upon which the contention is made by the accused that the trial court was without jurisdiction to try him for the offense charged in the indictment is that the general revenue laws and what is known as the "Byrd Liquor Law" do not apply to the county of Dickenson for the reason that the act of the legislature approved March 12, 1902 (Acts 1901-2, p. 321), was still in force, and provides in substance, that no license shall be granted for the sale of ardent spirits, either by wholesale or retail, in certain named counties, including Dickenson. In other words, the contention is that in the counties named in the act of 1901-2 the general revenue laws are not in force and that there can be no prosecution for a violation thereof in this case, but that if the accused has been guilty of the illegal sale of liquor in the county of Dickenson he can only be prosecuted and punished for the offense under the

said act prohibiting the granting of a license to sell ardent spirits in that county, which is a misdemeanor of which the justices of the peace in the county have sole and exclusive jurisdiction.

The conditions created by this special statute in the counties to which it applies are practically the same that result in any county in which, under the local option laws, a local option election has been held and the vote has resulted in favor of local option; that is, in favor of prohibiting the licensing of the sale of ardent spirits in the county or locality in which the election was held.

In *Fletcher* v. *Com'th.*, 106 Va. 840, 56 S. E. 149, substantially the same contention was made for the accused as is made in this case, viz., that the county of. Warren, having voted in favor of local option, and the indictment charging the defendant, Fletcher, with a violation of the general revenue laws, and with selling intoxicating liquors unlawfully in said county, the circuit court was without jurisdiction to try the case, for the reason that there could be no violation of the revenue laws in any county in which a license to sell ardent spirits could not be lawfully granted; that is, the indictment did not charge a violation of the revenue laws within the meaning of the statute conferring jurisdiction upon the circuit courts to try and determine that class of cases. In the opinion of the court by Keith, P., in that case, after stating the facts, it is said:

"We do not perceive that the character and nature of the offense charged is affected by the fact that it was committed in a local option district. The charge is that the defendant did 'unlawfully sell and deliver intoxicating liquors.' If he did it unlawfully, whether with or without a license, he was guilty of an offense against the law. That he also violated the local option law can have no influence upon the nature of the act. *Webster's Case,* 89 Va. 154, 15 S. E. 513. He has done that which the law says he shall

not do without having first obtained a license, and it does not lie in his mouth to say: 'It is true I did not have a license, but the act was committed in a local option district where it was impossible under the law to obtain a license.'

"It was forcibly urged by the Attorney-General that no reason of public policy can be suggested why the court should be given jurisdiction of the offense of unlawful sale of intoxicating liquors where the sale takes place in a district where such traffic may be licensed and denied such jurisdiction where committed in local option territory, and we concur with him in the view expressed, that the unlawful sale of liquor in a local option district is 'a more serious offense, more injurious to public morals, and a graver infraction of civic duty than a sale in a license district without a license, for it is both a violation of the revenue law (that is, it is the conduct of a business free from any burden of taxation, which can be legally conducted only upon paying the taxes imposed upon it, and which others lawfully engaged in it pay), and it is a sale also in flagrant defiance of the law, sanctioned by the votes of a majority of the qualified voters of the community, which prohibits any such traffic, and not only makes it illegal, but criminal.'

"We are of opinion that the offense against the Commonwealth here charged consists in the unlawful sale of intoxicating liquors; that it is none the less a violation of the revenue laws of the Commonwealth because it happens that the offense charged was committed in a local option district; and it follows, therefore, that the circuit court has concurrent jurisdiction with the justices of the peace for the trial of such offenses."

This case cannot be differentiated from the Fletcher case. In this case the special act so much relied on by the accused as taking from the circuit court of Dickenson county jurisdiction to try and determine cases of violation of the

revenue laws, itself *proprio vigore* prevents the licensing of the sale of ardent spirits in said county, and brought about exactly the same condition in that county as existed in Warren county when Fletcher was indicted and convicted for selling ardent spirits without a license so to do; therefore, the principle resting upon authority and sound reasoning applied to the Fletcher case is equally applicable to this and controls it.

The judgment of the circuit court here complained of is affirmed.

*Affirmed.*