Syllabus.

## Richmond.

### JOHN H. DRAPER v. COMMONWEALTH.

March 16, 1922.

Absent, West, J.

1. GRAND JURY—*Presence of Commonwealth's Attorney—Validity of Indictment.*—Notwithstanding section 4864 of the Code of 1919, forbidding a Commonwealth's attorney to go before a grand jury during their deliberations, the mere presence of the attorney for the Commonwealth in the grand jury room does not invalidate an indictment found at the time, if it satisfactorily appears that the accused was not prejudiced thereby.

2. GRAND JURY—*Presence of Commonwealth's Attorney—Validity of Indictment.*—Any "going before the grand jury" by the Commonwealth's attorney to advocate or influence the finding of an indictment would be a clear and substantial violation of section 4864 of the Code of 1919. But that section authorizes the Commonwealth's attorney to "advise the foreman of the grand jury or any member or members thereof in relation to the discharge of their duty." This advice ought always, as a matter of prudence and propriety, to be sought and given outside of the grand jury room. But where the Commonwealth's attorney in response to a request by the grand jury goes to their room and gives them advice, without seeking to influence their finding, an indictment thereafter found by them is not thereby invalidated.

3. STATUTES—*Codes—Adoption of Construction Given to a Statute by the Courts.*—The revisors and the legislature by incorporating section 3988 of the Code of 1904 without change in the Code of 1919, section 4864, impliedly adopted the construction placed upon the former section by the Supreme Court of Appeals.

4. GRAND JURY—*Presence of Commonwealth's Attorney—Validity of Indictment—Case at Bar.*—In the instant case the Commonwealth's attorney went before the grand jury, not voluntarily but at their request, not to advise whether they should find an indictment against accused, but to say whether they had a right to find a true bill as to some and not as to others whose names appeared in the draft of an indictment which had already been prepared by him, and advised them that they might strike out the names of two if they thought proper.

*Held:* That this did not constitute vital and reversible error.

5. CONSPIRACY—*Attempt to Murder—Mob—Witnesses—Questioning Accused as to why a Witness was not Present.*—Upon the trial of accused for conspiracy and attempt to murder as a member of a mob, the sheriff of the county was permitted to testify that he had attempted to summon a brother of the accused and had not been able to find him. The accused and his father were cross-examined as to the whereabouts of this brother. A witness for the Commonwealth testified he had been with accused and his brother and other members of the mob shortly before the assault, and had restrained accused from shooting at a certain colored man.

*Held:* That the brother of accused was a material witness, and the Commonwealth under the circumstances had the right to show that it had attempted to procure him as a witness, and to inquire of accused and his father whether they had anything to do with keeping him away from the trial, and that the fact that accused did not attempt to produce his brother was a matter for fair inference and argument.

6. APPEAL AND ERROR—*Error to Appear Affirmatively from the Record—Argument of Counsel.*—It was assigned as error that in his argument to the jury the Commonwealth's attorney alleged that defendant was responsible for the absence of a witness. There was nothing in the record to show that such an argument was either made or objected to, and the Supreme Court of Appeals cannot regard any alleged error which is not affirmatively shown by the record. If such an argument was made and was improper it could only be availed of upon appeal after having been excepted to and made a part of the record.

7. WITNESSES—*Accomplices and Accessories—One Accomplice Corroborating Another.*—If two or more accomplices are produced as witnesses, they are not permitted to corroborate each other, but the same rule is applied, and the same confirmation is required, as if there were but one.

8. WITNESSES—*Accomplices and Accessories—One Accomplice Corroborating Another—Instructions.*—Where it was conceded that a conviction might be based upon the testimony of a single accomplice, without any corroboration, and the court instructed the jury that the evidence of an accomplice is to be received with great caution, and warned them of the danger of basing a verdict on the unsupported testimony of an accomplice, there was no error to the prejudice of the accused in the refusal of an instruction telling the jury that the evidence of one accomplice could not be deemed as corroborating the evidence of another, especially where there was corroboration in the testimony of witnesses who were not accomplices.

9. CRIMINAL LAW—*Presence of Accused—Alibi—Preponderance of Evidence.*—Where the Commonwealth was trying accused upon the theory that he was present and actively participating in the unlawful acts of a mob at a jail, there was no burden of any sort on accused to show that he was not there until the Commonwealth had made a *prima facie* case against him. The burden was on the Commonwealth to show his presence beyond a reasonable doubt.

10. CRIMINAL LAW—*Presence of Accused—Alibi—Preponderance of Evidence—Instructions.*—In a prosecution of a member of a mob for conspiracy, the court instructed the jury that the burden was upon the Commonwealth to make out its case against the accused to the exclusion of a reasonable doubt, "but where the accused relies upon or attempts to prove an alibi in his defense, the burden of proving the alibi rests upon him."

   *Held:* That the proposition contained in the quoted part of the instruction indicated that there must be a preponderance of evidence for the alibi, and would have constituted reversible error had it not been rendered harmless by the context, and by the language of other instructions in the case, which made it clear that the burden was on the Commonwealth to prove beyond a reasonable doubt everything essential to the establishment of the charge in the indictment.

11. ALIBI—*Whether a Defense—Instructions.*—Alibi is regarded by some courts as an affirmative defense, but the better doctrine seems to be that it is not a defense in the accurate meaning of the term, but a mere fact shown in rebuttal of the State's evidence; and, consequently, the evidence introduced to support it should be left to the jury uninfluenced by any charge from the court tending to place it upon a different footing from other evidence in the case or calculated to disparage and excite prejudice against it.

12. ALIBI—*Burden of Proof—Reasonable Doubt.*—Where the Commonwealth has established a *prima facie* case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused.

13. ARGUMENTS OF COUNSEL—*Trial of a Member of a Mob—Attorney for the Commonwealth's Description of the Mob.*—On the trial of defendant for participation in an attempted lynching, the Commonwealth's attorney in argument used the following language: "Are we to permit a crowd of moonshiners to come

into our town, shoot it up, frighten the women and children, break into our jail and destroy the county's property, and go unpunished?" There was but slight evidence to show that the members of the mob were moonshiners, but the evidence was sufficient to justify what else was said by the Commonwealth's attorney, although the accused was not being tried for the things to which the language of the attorney for the Commonwealth referred, the essence of the appeal which the Commonwealth's attorney made to the jury was right and proper.

14. ARGUMENTS OF COUNSEL—*Latitude Allowed.*—In both civil and criminal cases very considerable latitude is and must be allowed counsel in the argument of their cases.

Error to a judgment of the Circuit Court of Halifax county.

*Affirmed.*

The opinion states the case.

*Martin & Leigh,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The defendant, John H. Draper, indicted, along with fourteen other alleged confederates, for conspiring and attempting to murder one Jim Coleman, was found guilty of an assault, and sentenced to serve a term of twelve months in jail and to pay a fine of $500.00.

The following brief preliminary statement of facts will be helpful to a proper understanding and disposition of the several questions arising on this writ of error:

On Sunday, March 20, 1920, Jim Coleman, a negro, was lodged in jail, charged with the murder of a white man named Rickman. That night an armed mob attacked the jail, and, having unsuccessfully attempted first to secure the keys from the jailer and then to break down the doors,

fired a number of shots into the building. The evidence tended to show that the mob was seeking Jim Coleman, and that the defendant was a participant and fired a shot into the room where Coleman was confined. Some of the men in the party were drinking, and the defendant admits that he had taken three drinks in his room at the hotel that night. There was a good deal of shooting, and the community was excited and alarmed. The mob failed, however, in its apparent purpose, and nobody was hurt, but the doors and windows of the jail were damaged, and two or three distillery "worms" which had been captured and stored at the jail were missing after the crowd dispersed.

The defendant denied that he was present or in any way involved in the attack on the jail, but his counsel concedes that there was evidence before the jury sufficient to warrant the verdict. He insists, however, that sundry errors were committed by the trial court to his prejudice, for which we are asked to award him a new trial.

1. The defendant tendered a plea in abatement whereby he sought to have the indictment quashed on grounds stated in the plea, as follows: "Jas. S. Easley, the attorney for the Commonwealth, after the grand jury was sworn and had retired to their room to consider and deliberate on said verdict, went before said grand jury during their deliberation and advised said grand jury to find said indictment a true bill, and said attorney for the Commonwealth was not at the time he was before said grand jury and while they were deliberating on said indictment, acting as a duly sworn witness. And, by reason of said illegal conduct of said attorney for the Commonwealth, and of the said grand jury, this defendant has been injured and prejudiced and said indictment returned."

Issue was joined on this plea, and Mr. Easley, attorney for the Commonwealth, being called as a witness, testified as follows:

"I will state, from my recollection, that I was not sworn as a witness before the grand jury nor did I testify before the grand jury, but I was asked to appear before them, which I did. Those are the facts as I recollect them.

"Did you advise them to find an indictment?

"I did not; no, sir. I was not asked in regard to that. I asked them to strike off two names from the indictment; they asked me if they had a right to find a true bill as to some and not as to others, and I told them they had a right to strike out those names, and they did take a pencil and strike out those two names. As I recollect, that is the question I was consulted about.

"I want to ask you, Mr. Easley, because you will recollect that I mentioned the matter to you several days ago, and my recollection is that you told me that you went before the grand jury, and not being willing to take the responsibility, you advised them to bring in an indictment.

"No, sir; I stated this: that I had stated to the grand jury when they were asking about the striking out of some names in the indictment, I stated that I had included in the indictment all the names of everybody about whom information had come to my office connected with this transaction, and it was probable that there was some names included in there that, when tried before a petty jury, they could not be convicted, but I felt it my duty to include in the indictment any names against whom I had information.

"I appeared there, but I did not hurt anybody; I struck off two names. I was inaccurate in saying it was done at my suggestion; I told them they had a right to do it. I want the record to be accurate about that."

This being the only evidence introduced for or against the plea, the court rejected the same and refused to quash the indictment.

Section 4864 of the Code contains the following provision material to the question under consideration:

"It shall, however, be unlawful for any attorney for the Commonwealth to go before any grand jury during their deliberations, except when duly sworn to testify as a witness, but he may advise the foreman of the grand jury or any member or members thereof in relation to the discharge of their duties."

This statute (found in section 3988 of the Code of 1904) was construed by this court in *Mullins* v. *Commonwealth*, 115 Va. 945, 950, 79 S. E. 324. In that case, the attorney for the Commonwealth was in the grand jury room several times during the deliberations of that body at the term at which the indictment then in question was found, having been called there by the grand jury, not as a witness, but for consultation. He did not advise the finding of the Mullins indictment, and was not present when it was under consideration. This court, in an opinion by Judge Cardwell sustaining the action of the trial court in overruling the defendant's plea and refusing to quash the indictment, said:

"Section 3988 of the Code of 1904 does declare it unlawful for any attorney for the Commonwealth to go before any grand jury during their deliberations, except when duly sworn to testify as a witness, with the qualification that 'he may advise the foreman of the grand jury or any members thereof in relation to the discharge of their duties.' It is unquestionably the policy of the statute, as has been the practice in this jurisdiction, to keep the grand jury independent of all outside interference, free and untrammeled in their deliberations, and while it is highly reprehensible for any attorney for the Commonwealth to violate in any degree either the terms or the policy of the statute, it would be a strained construction of it, upon the facts in this case, to say there has been such a disregard thereof as was or might have been injurious and prejudicial to the ac-

cused and calling for a dismissal of the indictment against him, upon the ground that it was returned by the grand jury because the attorney for the Commonwealth went before the grand jury while they were in session at the July term of the court, 1912, at which term this indictment was found and returned into court."

[1-3] We have no disposition to overrule or modify the construction of the statute as expressed in the above quotation from the *Mullins Case*, and while it would have been more prudent and appropriate for the attorney for the Commonwealth in the instant case to have kept out of the room entirely during the deliberations of the grand jury, we think that the case cited furnishes authoritative support for the action of the trial court in rejecting the plea and refusing to quash the indictment. The mere presence of the attorney for the Commonwealth in the grand jury room does not invalidate an indictment found at the time, if, as in this case and in the *Mullins Case*, it satisfactorily appears that the accused was not prejudiced thereby. The admonition by Judge Cardwell, quoted above, should be carefully observed by the attorneys for the Commonwealth, and any "going before the grand jury" to advocate or influence the finding of an indictment would be a clear and substantial violation of the law. But the statute authorizes the attorney to "advise the foreman of the grand jury or any member or members thereof in relation to the discharge of their duty." This advice ought always, as a matter of prudence and propriety, to be sought and given outside of the grand jury room. But we are not prepared to hold that the language of the statute as a whole, construed in the light of its evident purpose and of the decision in the *Mullins Case*, means that when the attorney in response to a request by the grand jury goes to their room and gives them advice "in relation to the discharge of their duty," doing so in a proper manner and without seeking to influence their

finding, he thereby renders invalid an indictment thereafter found by them in the case about which he thus gives the advice. The revisors and the legislature incorporated section 3988 of the Code of 1904 without change in the Code of 1919 (section 4864), thus impliedly adopting the construction placed thereon by the *Mullins Case.*

[4] In the case at bar, Mr. Easley went before the grand jury, not voluntarily, but at their request, not to advise whether they should find an indictment, but to say whether they had a right to find a true bill as to some and not as to others whose names appeared in the draft of an indictment which had already been prepared by him. There were evidently two names included in that draft which they were disposed to omit, and, upon a fair interpretation of his testimony, it seems clear that all he did was to tell them that they could, if they thought proper, strike out those two names. It is true that he said in the course of his testimony that he "asked them to strike off two names," and that he "struck off two names," but the general trend of his testimony, as above outlined, indicates that what he actually did was merely to tell the jury, in answer to their inquiry, that they had the right to strike the two names out; and he removed any doubt about what occurred by his concluding statement, which was: "I was inaccurate in saying that it was done at my suggestion. I told them they had a right to do it. I want the record to be accurate about that."

Under these circumstances, it seems reasonably certain that no actual harm was suffered by the prisoner as the result of Mr. Easley's visit to the jury room. If he had given the same advice to the foreman, or to one or all of the members of the grand jury, outside of the room, he would have been strictly within the requirements of the law, and precisely the same indictment would have been found. It would be contrary to the *Mullins Case,* and likewise con-

trary to our own best judgment, to hold that the incident constituted vital and reversible error.

The undoubted purpose of the statute was to preserve privacy of deliberation and independence of action by the grand jurors, free from outside control or influence. These considerations have always been regarded in law as essential to a safe and proper discharge of duty by inquisitorial bodies of this character, and the statute can hardly be regarded as anything more than declaratory of the general law. It is said in 10 Enc. Pl. & Pr., page 398: "As heretofore stated, indictments must be found by authorized grand jurors, other persons being excluded from participation, and the action of the grand jury in finding or refusing to find indictments cannot be interfered with or influenced by any person whatsoever. Statutes have been generally enacted for the purpose of preserving the privacy of deliberations of the grand jury. But the rule does not prohibit the presence of authorized officers, at least up to the time of the action of the grand jury in determining the result. Thus the prosecuting attorney is the legal adviser of the grand jury in respect of the manner of its proceeding, and may be present and assist it by his counsel. But he can act only as adviser, and has no right to exercise any manner of control over its actions."

The authorities generally, independent of statute, are to the above effect. We do not wish in the least degree to weaken or impair the sound policy of the law which seeks to secure free and independent action on the part of the grand jury; but the conduct of the attorney for the Commonwealth, as approved by the trial court in this case, can hardly be regarded as a substantial violation of such policy, and it certainly did not result in a substantial violation of the rights of the accused.

[5] 2. The sheriff of the county was permitted to testify that he had attempted to summon Clark Draper, a brother of

42

the prisoner, as a witness for the Commonwealth, and had not been able to find him. The prisoner's father, I. J. Draper, was cross-examined as to the whereabouts of Clark Draper. The prisoner was likewise cross-examined on this point, and was also asked whether he knew that his brother, Clark, was going to be summoned as a witness for the Commonwealth. During the cross-examination of I. J. Draper, the attorney for the Commonwealth took occasion to say: "We tried to summons him, but he beat us to it."

All of this testimony and examination was allowed over the objection and exception of the prisoner; and it is argued that the clear purpose thereof was to create the impression upon the jury that Clark Draper would have been a material witness against the defendant, and that he was, therefore, responsible for his brother's nonappearance as a witness.

We do not perceive that the prisoner could have been prejudiced by the testimony recited above and what occurred in connection therewith. It is said in the brief for the prisoner that there was no other evidence in the record about Clark Draper, but this is a mistake. A witness for the Commonwealth had testified that he and Clark Draper had been with John Draper and the other members of the mob shortly before the assault on the jail, and had restrained him from shooting at a certain colored man on the way. If this statement was true, then Clark Draper would have been a material witness for the Commonwealth; and if it was not true, he would have been a material witness for the defendant. Under these circumstances, the Commonwealth had the right to show that it had attempted to procure Clark Draper as a witness, and further, to inquire of both the prisoner and his father whether they knew the whereabouts of Clark Draper and whether they had anything to do with keeping him away from the trial. The fact that they did not attempt to produce Clark Draper or

account for his absence, when there was evidence before the jury tending to show that he knew material facts in the case, was a matter for fair inference and argument.

[6] It is further stated in the brief for the prisoner that the attorney for the Commonwealth argued to the jury that the defendant was responsible for the absence of Clark Draper as a witness. There is nothing in the record to show that such an argument was either made or objected to, and it is familiar law that this court cannot regard any alleged error which is not affirmatively shown by the record. If such an argument was made and was improper, it could only be availed of here after having been excepted to and made a part of the record at the trial.

[7, 8] 3. Two of the witnesses introduced in behalf of the Commonwealth were members of the mob that attacked the jail, and their testimony tended to implicate the prisoner. At the conclusion of all the evidence, the prisoner asked for the following instruction: "The court instructs the jury that, as the evidence of an accomplice is tainted, and the danger of collusion between accomplices, and the temptation to clear themselves by fixing responsibility upon others is so strong, the jury should receive and act upon such evidence with great caution. And the court further instructs the jury that the evidence of one accomplice cannot be deemed to corroborate that of another."

The court refused to give the instruction just quoted, but gave, in lieu thereof, the following:

"The court instructs the jury that, while they may find a verdict upon the unsupported testimony of an accomplice, such evidence is to be received with great caution, and the court, in this case, warns the jury of the danger of basing a verdict on the unsupported testimony of an accomplice."

Counsel for the prisoner admitted that the instruction given by the court was a proper substitute for the first part of the instruction as asked for by him, but insists that

the court erred in refusing to tell the jury that the evidence of one accomplice cannot be deemed as corroborating the evidence of another. It would have been proper to give an instruction in terms covering the proposition expressed in the last sentence of the instruction requested by the defendant. As was said by this court in *Jones* v. *Commonwealth*, 111 Va. 862, 69 S. E. 953, according to the generally accepted rule, "if two or more accomplices are produced as witnesses, they are not permitted to corroborate each other, but the same rule is applied and the same confirmation is required as if there were but one"; and it was therein held to be error (though not the principal one upon which the reversal was based) that the trial court refused to instruct the jury accordingly. In that case, however, it does not appear what other instructions were given, and, of course, the point ought to have been covered in some such way as to be entirely fair to the accused. But it is conceded that a conviction may be based upon the testimony of a single accomplice, without any corroboration, and in view of the caution with which the jury was admonished in the instant case to regard such evidence, we are of opinion that there was no error to the prejudice of the prisoner in the instruction given upon this point, or in the refusal to give one in the exact form in which it was asked by the prisoner. The jury was not bound to find corroboration—they could convict without that—but corroboration was present, if needed, in the testimony of witnesses who were not accomplices. This assignment of error is, in our opinion, without merit.

[9, 10] 4. The next assignment calls in question the correctness of the following instruction given by the court at the instance of the Commonwealth and over the objection of the defendant:

"The court instructs the jury that the burden rests upon the Commonwealth to make out its case against the accused to the exclusion of a reasonable doubt, but where the ac-

cused relies upon or attempts to prove an alibi in his defense, the burden of proving the alibi rests upon him."

The proposition contained in the concluding part of the foregoing instruction gives rise to the question here under consideration. That proposition, standing alone, would indicate that there must be a preponderance of evidence for the alibi, and would constitute reversible error were it not rendered harmless by the context, and by the language of other instructions in the case.

The Commonwealth was trying the accused upon the theory that he was present and actively participating in the unlawful acts of the mob at the jail. There was certainly no burden of any sort on the defendant to show that he was not there until the Commonwealth had made a *prima facie* case against him. The burden was on the Commonwealth to show his presence beyond a reasonable doubt. That fact was an essential part of its case. 12 Cyc. 384, text and cases cited in note 18.

The case of *Lucchesi* v. *Commonwealth*, 122 Va. 872, 883, 94 S. E. 925, relied on by the Commonwealth, is not in point. The defense there was distinctly affirmative, and the instruction on burden of proof was not questioned in that particular. The objection made to it was on another ground.

[11] In 2 Am. & Eng. Enc. (2nd Ed.), page 53, it is said: "Alibi is regarded by some courts as an affirmative defense, but the better doctrine seems to be that it is not a defense in the accurate meaning of the term, but a mere fact shown in rebuttal of the State's evidence; and, consequently, the evidence introduced to support it should be left to the jury, uninfluenced by any charge from the court tending to place it upon a different footing from other evidence in the case or calculated to disparage and excite prejudice against it." See also *State* v. *Kelly,* 16 Mo. App. 213; *Albritton* v. *State,* 94 Ala. 76, 10 So. 426; *State* v. *Reed,* 62 Ia. 40, 17 N. W. 150; *State* v. *Rockett,* 87 Mo. 666; 1 Bishop Crim. Proc. 1062.

In *State* v. *McQueen,* 69 N. J. L. 530, 55 Atl. 1006, 1009 (citing *Sherlock* v. *State, infra*), the Supreme Court of New Jersey dealt with the question here under consideration as follows: "Another assignment, however, deals with the refusal of the .judge to charge as requested upon the question of *alibi.* He was asked to charge that if, upon the whole case, the testimony raised a reasonable doubt that the defendants were present when the alleged crimes took place, they should be acquitted. Another instruction requested was: 'That the defendant is not bound to prove an *alibi* beyond a reasonable doubt; if, upon the whole case, the testimony raises a reasonable doubt that the defendant was present when the crime was committed, he should be acquitted.'

[12] "As McQueen admitted his presence, these requests were pertinent only to the case of Grossmann. Both requests were refused, with comments that gave the jury to understand that while a defendant asserting an *alibi* was not bound to prove it beyond a reasonable doubt, he must establish it by a clear preponderance. of evidence. The impression left upon the jury must have been that the evidence tending to show the absence of Grossmann was to be disregarded, unless it outweighed that which tended to prove his presence at the scene of the riot. But whatever goes towards proving an *alibi* (although it falls short of establishing it), at the same time tends to throw doubt upon the commission of the crime, where the presence of the defendant is essential to guilt. And if a reasonable doubt of guilt is raised, even by inconclusive evidence of an *alibi,* the defendant is entitled to the benefit of that doubt."

The opinion in the *McQueen Case* shows that the comments of the trial judge in charging the jury in that case upon the subject of *alibi* were such as to lead them to think that the defendant must prove his *alibi* by a preponderance of evidence, and this was held to be error.

In *Sherlock* v. *State,* 60 N. J. L. 31, 37 Atl. 435, the Supreme Court of New Jersey held that it was error to instruct the jury in a criminal case that a defendant relying upon an *alibi* must prove it by a preponderance of evidence, this ruling being based upon the ground that such an instruction may have deprived the defendant of the benefit of a reasonable doubt in the mind of the jury as to whether he was present when proof of his presence was essential to his conviction.

In Beale's Crim. Pl. & Pr., section 289, it is said: "Thus, where the evidence offered by the defendant is of an *alibi* —that is, that he was at another place at the time the crime was committed, and therefore could not have committed it—he is obviously merely disproving the truth of the prosecution's evidence or inference from evidence; he is making an absolutely negative defense. It is not for him to establish an *alibi,* but simply to throw doubt on the case of the prosecution. Clearly, therefore, when he produces evidence tending to prove an *alibi,* no burden is on him; if he raises a reasonable doubt of the charge, he is to be acquitted." See also 4 Wigmore on Evidence, p. 3561, sec. 2512, par. (a), and cases cited in note 3.

We approve the following statement from the text in 2 Am. & Eng. Enc. (2nd Ed.), page 56: "The true doctrine seems to be that where the State has established a *prima facie* case and the defendant relies upon the defense of *alibi,* the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused." See also *State* v. *Lowry,* 42 W. Va. 205, 212, 24 S. E. 561; 12 Cyc. 384, text and cases cited in note 18; 8 Ruling Case Law, p. 224, sec. 220, and cases in note 12.

That portion of Commonwealth's instruction No. 1 here complained of would, as we have already indicated, probably have led the jury to think that the *alibi* must be established by a preponderance of evidence, and thus have been in conflict with the better doctrine and with the weight of authority, but for the fact that the instruction as a whole, taken with the other instructions, could not have been so construed. The jury must have understood that such burden as rested on the defendant required no more than that he should, by his proof, raise a reasonable doubt as to his presence and participation in the mob. In 2 Am. & Eng. Enc. (2nd Ed.), the text, as we have seen, goes very far in holding that the accused in a criminal case never has to do more with his proof of an *alibi* than to raise a reasonable doubt of his presence at the time and place of the crime, but says, nevertheless, on page 55: "Where, on a question of *alibi*, the charge of the court contains an objectionable statement of law, this is no ground for a reversal if the remainder of the charge, or the charge taken as a whole, contains a full and fair exposition of the law." Citing numerous cases.

The learned judge of the trial court in the instant case evidently acted upon the authority of *Thompson* v. *Commonwealth*, 88 Va. 45, 47, 13 S. E. 304, in which it was held that an instruction for the Commonwealth containing the identical language objected to in this case was not erroneous, because the instruction containing that language, and also an instruction given in the case for the defendant, made it clear that the burden was on the Commonwealth to prove beyond a reasonable doubt everything essential to the establishment of the charge in the indictment. Exactly the same thing is true in this case as in the *Thompson Case*. The instruction complained of starts out with the proposition "that the burden rests upon the Commonwealth to make out its case against the accused to the exclusion of a reasonable

doubt." Instruction "B," given at the instance of the defendant, told the jury, among other things, that "the burden of proof is upon the Commonwealth to prove beyond a reasonable doubt all the material facts alleged in the indictment, or the prisoner must be acquitted"; and instruction "E," given at his request, was as follows:

"The court instructs the jury that the law presumes every person charged with crime to be innocent until the Commonwealth has established his guilt by evidence so strong, so clear, and so conclusive, that there is left in the minds of the jury no reasonable doubt as to his guilt. This presumption is an abiding presumption, and goes with the accused through the entire case and applies at every stage thereof until repelled by proof.

"And in this connection the jury is instructed that it is never sufficient that the accused, upon speculative theory or conjecture, may be guilty; or that by the preponderance of the testimony his guilt is more probable than his innocence; for until his guilt has been proved beyond all reasonable doubt in the precise and narrow terms as charged in the indictment, the presumption of innocence still applies, and they must acquit him."

We feel entirely safe in deciding that the Commonwealth's instruction No. 1, here complained of, could not have prejudiced the defendant. If the evidence in respect to the *alibi* left any doubt in the minds of the jury as to his presence and participation in the crime, it necessarily left a doubt in their minds as to his guilt, and in that event they were bound to acquit him under the unmistakable directions of the court.

[13] 5. The attorney for the Commonwealth, in closing the argument of the case before the jury, said: "Are we to permit a crowd of moonshiners to come into our town, shoot it up, frighten the women and children, break into our jail and destroy the county's property, and go unpunished?"

The use of this language by the attorney for the Common-
wealth was objected to by defendant's counsel on the ground
that there was no evidence to support it, that it was an
appeal to the prejudice and passion of the jury, and that
the defendant was not being tried for any of the acts therein
mentioned.   This objection was overruled, and the defend-
ant excepted.

Assuming that the term "moonshiners," as used by the
attorney for the Commonwealth and as understood by the
jury, was meant to describe persons engaged in the illicit
manufacture and sale of ardent spirits, there was no evi-
dence in the record to show that the members of the mob
belonged to that particular class of law breakers, unless the
fact that they seem to have stolen two or three "worms"
from the jail, and were themselves under the influence of
whiskey, tended to prove that fact.   The proof that they
did "shoot up the town," in the common acceptation of that
expression; frighten women and children, break into the
jail, and destroy, or certainly injure the county's property,
was altogether sufficient to justify what the Common-
wealth's attorney said in that respect, if he had any right
to refer to the general conduct of the mob in connection
with the principal charge against this defendant.

It is true that Draper was not being tried for any of the
things to which the above-quoted language of the attorney
for the Commonwealth referred, and, strictly speaking, the
attorney might more appropriately have invoked the neces-
sity of enforcing the law, and thus preserving the peace
and good order of the community, by a criticism of what
was the ultimate purpose of the mob, but the essence of
the appeal which the Commonwealth's attorney made to the
jury was right and proper.   Men who come by night, in-
toxicated and armed, to take the law in their own hands,
and interfere by force and violence with a due and orderly
administration of justice, and with the proper discharge

of duty by duly constituted officers, are no less violators of the law than those who by night make and sell whiskey; and, though the accused was not charged with frightening women and children and damaging or destroying the county's property, those things were the necessary consequences of what the mob was deliberately and unlawfully doing, and added to the enormity of their crime. The fact that the pointing out of these aggravating circumstances was likely to arouse the indignation of the jury, does not justify the charge that the attorney for the Commonwealth was making an appeal to the passion and prejudice of the jury. Persons charged with a violation of the law have the right to a trial free from the influence of passion and prejudice, but they do not constitute such a favored class as that they may demand immunity from all feeling of disapproval or indignation on the part of those who try them when there is satisfactory evidence that they are guilty.

[14] In both civil and criminal cases, very considerable latitude is, and must be, allowed counsel in the argument of their cases, and we do not perceive that the attorney for the Commonwealth in this case went at all beyond the reasonable limits of a fair argument, nor that the court was in the least degree wrong in refusing to exclude his remarks.

There are other errors assigned in the petition upon which this writ was granted, but they were expressly waived at the oral argument.

For the reasons stated, the judgment complained of is affirmed.

*Affirmed.*

BURKS, J., dissenting:

Section 4864 of the Code, quoted in the opinion of the court, belongs to the class of statutes known as criminal statutes, and should be strictly construed against the Com-

monwealth. The object of it was to exclude attorneys for the Commonwealth from the grand jury room during the deliberations of the grand jury in all cases, except the single case mentioned in the statute—"when duly sworn to testify as a witness." If he goes there under any other conditions, his act is declared to be unlawful. In this case, he went while the grand jury were deliberating on this indictment. His act was in direct contravention of the statute. This being true, I do not think that any testimony should be received in explanation of what he did or said while there. His advice to the foreman, or any member of the grand jury should be given elsewhere, and the grand jury left untrammeled during its deliberations.

I also think that the instruction on the subject of *alibi* is contradictory and misleading. The latter part of it is plainly wrong, as pointed out in the opinion. When the instruction is read as a whole, it apparently says that, as a general rule, the Commonwealth must make out its case against the accused to the exclusion of a reasonable doubt, but that the defense of *alibi* is an exception to this rule, and if the accused relies upon it, "the burden of proving the *alibi* rests upon him."