## Staunton

NOAH THOMAS LEAR v. COMMONWEALTH OF VIRGINIA.

September 10, 1953.

Record No. 4118.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Harry Blatt* and *Julian K. Hickman*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Thomas M. Miller, Assistant Attorney General*, for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Noah Thomas Lear was tried in the Circuit Court of Rockingham County, Virginia, upon an indictment which charged that he, "on or about the 17th day of June, 1951, in said County, with force and arms, in and upon one Ogretta Jane Dove, a female child under the age of sixteen years, to-wit, of the age of thirteen (13) years, unlawfully and feloniously did make an assault, and her, the said Ogretta Jane Dove, unlawfully and feloniously did carnally know and abuse, * * * ." Code of Virginia, 1950, § 18-54. The accused pleaded not guilty, and undertook to prove an alibi. The jury found him "guilty as charged in the indictment," and fixed his punishment at seven years in the penitentiary. We granted writ of error.

The assignments of error relate only to the granting and refusal of instructions. Before considering them, it will be helpful to consider the evidence which is certified to us in narrative form. It is necessary to set it out in more detail than would otherwise be required, since the accused in support of his defense of alibi contended in argument that the testimony of the prosecuting witness and her sister is inherently incredible.

Ogretta Jane Dove, the prosecutrix, did not arrive at the age of fourteen years until June 30, 1951. At the time of the offense charged, she was, therefore, but thirteen years of age. One of eleven children, she lived at the home of her parents in Bergton, in Rockingham County, Virginia. She attended school, being advanced as far as the seventh grade. Noah Thomas Lear, the accused, lived at the home of Mr.

and Mrs. Willard Ritchie about one-half a mile from Bergton. In June, 1951, and for certain periods before that time, Lear worked at the home of Jess Dove, the father of the prosecutrix, as a farm laborer.

Ogretta said she first became acquainted with Lear in December, 1950; but that she came to know him better in 1951, when he "courted her some." She testified that on Sunday, June 17th, 1951, Lear, together with a companion, Guy Dove, came to her home; that the rest of her family except her sister, Katherine, then sixteen years of age, were visiting that day at the home of relatives in near-by West Virginia; that Lear and Guy Dove came into the house while she and her sister, Katherine, were in their bedroom combing their hair; that Katherine and Guy Dove went out on the porch while she and Lear remained in the house; and that later while she and Lear were in the kitchen, Lear picked her up, carried her into her mother's bedroom, and there had sexual intercourse with her. She consented, made no outcry, nor any subsequent complaint. Lear and Guy Dove left, and the two girls then went to church.

Ogretta further testified, without objection, that Lear had sexual relations with her upon occasions after that; that specifically on July 8, 1951, he tore the screen off the window of the room where she was sleeping with Katherine and some of her other sisters; that he did not bother her at first, but lay across the foot of her bed; that she and Katherine got him out on the porch; and that when her sister went back into the house, Lear had "relations" with her on the porch.

Ogretta also testified that as a result of the intercourse on June 17, 1951, she bled and some of the blood got on her underclothing and on the bedclothing, adding that she had been menstruating that day; but no one seemed to notice the blood. She said that she first learned that she was pregnant in July, 1951, when she missed her menstrual period. She stopped school in February, 1952, because of the approaching birth of her child. A girl was born to

her on April 11, 1952. She testified positively that she had not kept company with any other boy or man; that Lear was responsible for her pregnancy; and that he is the father of her child. She added that Lear left the community in August, 1951, and had nothing to do with her after that time.

No other witness testified as to the actual fact of intercourse with the prosecutrix. There was some corroboration by the mother and sister of Ogretta upon incidental and collateral matters. The mother said she noticed the accused "talking to Ogretta a lot." She said she was absent from home on June 17, 1951, with her husband and children, except Ogretta and Katherine, and that she returned late in the evening; but noticed nothing unusual about her bed and didn't bother about the other beds in the house. She and her daughter, Katherine, said they never knew Ogretta to have a date with any boy or man except Lear. Katherine corroborated Ogretta's testimony that the accused and Guy Dove came to their home on June 17, 1951. She heard Ogretta and the accused talking in her mother's bedroom as she sat on the porch with Guy Dove. She added that they remained in the bedroom about half an hour, and when they came out, she noticed nothing unusual. Katherine also remembered the occasion when Lear came into their home through the window of her mother's room and went to sleep on the bed of Ogretta. She did not recall that Ogretta left the house on that occasion, and both she and Ogretta were somewhat confused as to whether the exact date was July 8, 1951.

Mrs. Willard Ritchie testified that the accused left her home on June 16, 1951, with his brother, Charles Lear, and two friends, Samuel Byers and Bobby Smoot in Charles Lear's car, taking his belongings and saying that he was going to the home of his parents at Conicsville, Virginia. He was not at her home on June 17, 1951, and she did not know where he was that day. He returned to her home July 1, 1951, and stayed there three weeks, during

which time he worked for the father of the prosecutrix. He then left and returned in November for a short stay.

Byers, Charles Lear and Smoot were called as witnesses for the defendant. They testified that they went to Bergton on June 16th, and took Lear to his parents' home at Conicsville. Each said that they were with the accused all of the following day. The certificate of evidence tells us that they "were in great confusion as to Lear's and their own whereabouts on June 17th. While they all testified they were with him, they testified they were with him at various places." Byers said that he and Smoot stayed in the home of the accused the night of June 16th, and that both of them were with him at Conicsville all of June 17th. Charles Lear said that they remained at Bergton about half an hour on June 16th, and then took Byers to his home at Mt. Jackson, Virginia. Smoot said that he "knew that Lear remained at Conicsville all of June 17th."

The accused testified that he worked for the father of the prosecutrix until June 16th, 1951, during which time he lived at the Ritchie residence; that on June 16th, he went from Bergton to Conicsville with Byers, Charles Lear and Smoot; and that on the following day he went to New Market with Smoot and Charles Lear, and did not return to Bergton until July 1, 1951, He stated that he was at the home of the prosecutrix on May 27, 1951, with Guy Dove, but was not there on July 8, 1951. He denied having sexual relations with the prosecutrix at any time.

Guy Dove said that the only time he was with the accused at the home of the prosecutrix was on the morning of May 27, 1951; and that he noticed nothing out of the ordinary on that occasion.

There are two assignments of error. One relates to the giving of an instruction at the request of the Commonwealth, and the other to the refusal of the trial court to grant an instruction requested by the accused. Instruction No. 4, the only one of the six given to the jury to which accused objected, reads as follows:

"The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt that the defendant, Noah Thomas Lear, had sexual intercourse with Ogretta Jane Dove at any time before she became 14 years of age, you shall find the defendant guilty regardless of whether or not force was used by him in the accomplishment of such act and regardless of whether or not such act was done with or without her consent, and shall fix his punishment in accordance with the charge to the jury."

The instruction which was refused reads:

"The Court instructs the jury that before the defendant can be convicted of the offense charged in the indictment, they must be satisfied from all the evidence beyond a reasonable doubt that Ogretta Jane Dove was on the 17th day of June, 1951, under the age of 14 years, that on said date the defendant had sexual intercourse with her, and the Court further instructs the jury that unless they believe that the offense charged took place on or about said date, then they should find the defendant not guilty."

While the record shows an exception was noted in each instance, it does not show that any specific ground of objection was assigned to either ruling of the trial court as required by Rule of Court 1:8. The accused, however, here contends that the grounds for the objections made are apparent from the language of the instruction refused.

The accused specifically argues that the words "at any time" in instruction No. 4 referred to a vague and indefinite date and could have been considered by the jury as applying to the alleged offense of July 8, 1951, for which he was not indicted. He, therefore, contends that the jury might have believed him guilty only of the act charged as of July 8th, and, in that event, he was subject to be convicted only for a lesser offense than that charged, because the prosecutrix was then between fourteen and sixteen years of age. He overlooks the qualifying clause, "before she became fourteen years of age," which immediately follows the words "at any time," and the fact that the only offense charged

against him is that of June 17th. The finding of the jury that the accused was "guilty as charged in the indictment" shows that they fully comprehended the plain, simple and precise language of the instruction read as as whole.

As a general rule, time is not a material ingredient of the offense of rape, and it need not be proved precisely as alleged, it being sufficient in prosecutions for the offense on females under the age of consent to prove the commission of the offense on any day when the female was still under the statutory age. All that is necessary is that the evidence, in its entirety, show that the crime charged was committed within the period when the female was under that age. 75 C. J. S., Rape, § 45b (3), page 515; 44 Am. Jur., Rape, § 53, page 931.

This is a case of statutory rape. The question of the consent of the prosecutrix is immaterial. In Virginia, carnal knowledge of a female child under the age of sixteen years constitutes rape, whether or not the act be accomplished against her will, or with or without her consent. The degree of punishment to be determined by the jury depends upon the peculiar circumstances of the case and the particular age of the female. Code of Virginia, 1950, § 18-54.

In prosecutions for rape, an accused may be convicted upon the sole and uncorroborated testimony of the prosecutrix, and this is true even though the prosecutrix be a child of tender years. The weight to be given to her testimony is a question exclusively for the jury. *Givens* v. *Com.*, 29 Gratt. (70 Va.) 830, 835; *Stump* v. *Com.*, 137 Va. 804, 810, 119 S. E. 72; *Addington* v. *Com.*, 161 Va. 975, 977, 170 S. E. 565; *King* v. *Com.*, 165 Va. 850, 856, 183 S. E. 173.

See *Bailey* v. *Com.*, 82 Va. 107, 114; *Smith* v. *Com.*, 85 Va. 924, 927, 9 S. E. 148; *Glover* v. *Com.*, 86 Va. 382, 10 S. E. 420.

The evidence is conflicting, and as to the fact of sexual intercourse it may be said that the verdict is supported only by the testimony of the prosecutrix, which is corroborated upon certain incidental and collateral matters.

However, there is no denial that the prosecutrix was under fourteen years of age until her birthday on June 30, 1951. The indictment charges only one act, an offense committed "on or about the 17th day of June, 1951." This was the only offense accused was called upon to defend. No evidence of any other offense prior to the fourteenth birthday of the prosecutrix was submitted. No objection was made to the admission of testimony of subsequent acts of intercourse, and its admission is not here contended to be error. It is conceded that it was offered as corroboration of the intimacy and familiarity of the parties. Neither the indictment nor the instructions cover any offense occurring after the prosecutrix became fourteen years of age. Moreover, it is stated in the brief of the accused that "Lear was tried for only an act taking place on June 17, 1951."

We conclude, therefore, that there was no error in the granting of instruction No. 4. Nor was there error in refusing the instruction requested by accused. This instruction is repetitious in part and confusing and misleading in other parts. The jury had already been instructed that the offense must be proved "beyond a reasonable doubt." The age of Ogretta Jane Dove was not in question. There was no attempt to contradict the evidence that she was under the age of fourteen years on the 17th day of June, 1951. Putting her age in the form of a question to the jury was misleading. The instruction first told the jury that they "must be satisfied" that the accused had sexual intercourse with the prosecutrix on June 17, 1951, and in a following clause told them that unless they believed "that the offense charged took place *on or about said date*, then they should find the defendant not guilty." (Italics added). The two statements were confusing and misleading, and the first in conflict with instruction No. 4.

We have repeatedly held that an instruction which tends to mislead or confuse the jury, or which is contradictory of an instruction already given should be refused. 10 M. J.,

Instructions, § 27, page 228, and cases cited. Instruction No. 4 adequately instructed the jury as to the law applicable.

██ No request was made for an instruction relating to the defense of alibi.

In *Draper v. Com.*, 132 Va. 648, 663, 111 S. E. 471, 475; *Fenner v. Com.*, 152 Va. 1014, 1020, 148 S. E. 821; and *Noblett v. Com.*, 194 Va. 241, 248, 72 S. E. (2d) 241, we approved the following statement from the text in 2 Am. & Eng. Enc. (2d ed.), page 56:

"The true doctrine seems to be that where the State has established a *prima facie* case and the defendant relies upon the defense of alibi, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused."

While it is contended before us that the testimony of the prosecutrix and her sister, Katherine Dove, was such as to be inherently incredible, there is no assignment of error that the verdict is contrary to the evidence or without evidence to support it. There is no merit in the contention. The facts related by the witnesses are not so extraordinary and improbable as to deny belief, nor contrary to human experience. The question of the credibility of the witnesses was one for the jury to determine, and they were adequately instructed to that effect. No question of corroboration is involved.

The accused has had a fair trial. The jury was fully and correctly instructed. The evidence was sufficient to support the verdict, and the judgment must be affirmed.

*Affirmed.*