COMMONWEALTH *vs.* JANUARO FREITAS. No. 02-P-38. August 28, 2003. *Rape. Indecent Assault and Battery. Assault and Battery. Evidence,* Fresh complaint, Emotional state, Medical record, Alibi. *Practice Criminal,* Discovery. *Alibi.*

Januaro Freitas was convicted by a jury, sitting in Superior Court, of multiple sexual assaults on a ten year old child, whom we shall call Carla. Specifically, the jury found by its verdicts that the defendant had placed his penis in the vagina and anus of Carla; had attempted to compel an act of fellatio; had improperly touched her vagina; and had compelled her to place her hand on his penis. As recounted by the young complainant, these events occurred in the morning after her mother left for her work and before she left for school. There are four appellate issues. We affirm.

1. *Whether fresh complaint went beyond established boundaries.* Carla's mother gave fresh complaint evidence. During the course of her testimony she said that the defendant had touched her daughter's breasts. Carla had made no such complaint when she testified. The scope of fresh complaint testimony is limited to corroboration of the complainant's description of what happened. *Commonwealth* v. *Snow*, 30 Mass. App. Ct. 443, 446 (1991). See generally, Liacos, Brodin, & Avery, Massachusetts Evidence § 6.19.2, at 350 (7th ed. 1999). Defense counsel objected to the mother's trespass over that line. The trial judge observed that the discrepancy was not significant. He was surely right on that score, in view of what Carla *had* testified to, which included the defendant having ejaculated on her and a description of his attempted fellatio. Nevertheless, the judge offered to "tell the jury to disregard any reference to breasts." Defense counsel responded, "No, I don't ask that." There was no error for the reasons, if no other, that defense counsel refused the judge's offer of a prophylactic instruction and that compared to what the primary witness had testified to, the detail about breast touching was inconsequential. See *Commonwealth* v. *Coleman*, 30 Mass. App. Ct. 229, 236 (1991).

2. *Testimony about mother's emotional state.* During her testimony, the mother was asked, "What was your emotional state, ma'am, during this conversation [with Carla]?" Over objection, the mother was allowed to answer and she said, "Upset, sad, worn out, and I cried." As a general rule, the emotional suffering of a victim's family is not probative of the guilt of a defendant, and questions about the subject are improper. See *Commonwealth* v. *Lorette*, 37 Mass. App. Ct. 736, 742 (1994), *S.C.*, 422 Mass. 1014 (1996). In this case, however, the defense in its opening statement had placed the credibility of the mother in issue, i.e., the suggestion was that, out of anger with the defendant for having broken off a relationship and to obtain revenge, she had fabricated, and had induced Carla to fabricate, the account of sexual molestation. By way of response to that line of defense, the mother's descrip-

tion of her daughter's revelations and her reactions to them, which included seeking advice and assistance from a paralegal advocate, were of some relevance. There did not occur in this case the luxuriating in ghastly details that ran the risk of inflaming the jury, as occurred in the *Lorette* case. *Id.* at 742-743.

3. *Late discovery of medical record.* Under a discovery order, the prosecution was to turn over to the defense any records of a medical examination of Carla in the wake of her allegations. The prosecution did not produce any. For this there was some reason: a child abuse report of the Department of Social Services stated, "The child did not get medically checked because the last sexual assaults took place at least seven months ago." During defense counsel's cross-examination of the mother, however, it came out that in March, 1999, after Carla told her mother she would seek foster care should the defendant return to live with them, the mother called (through an English-speaking intermediary) Cambridge Hospital. In response to further cross-examination, the mother said she had taken Carla to Cambridge Hospital once, that Carla had been examined by Dr. Sigman, and that Dr. Sigman had said it was too late to look for physical signs of sexual abuse. Defense counsel claimed ambush and subverting of a trial strategy that had assumed no medical evidence as to the child.

The trial judge authorized a summons to the hospital for Carla's records and said that he would examine them in camera. This the judge did, and he determined there was nothing of use to the defendant. He also determined the records were of a nonsensitive nature and allowed defense counsel to inspect them. From what has been made available to us in a supplemental record appendix furnished by the Commonwealth, the Cambridge Hospital records recount intake conversations by telephone with a hospital nurse on March 22, 1999, and March 23, 1999. That was almost nine months after the last reported act of sexual molestation. There is also a report of a pelvic ultrasound examination performed on November 9, 1999. The trial judge was on solid ground in deciding, in his discretion, that the defendant had not been prejudiced by the tardy awareness of the pelvic examination at Cambridge Hospital, and that there was no occasion for a mid-trial continuance. See *Commonwealth* v. *Miles*, 420 Mass. 67, 85 (1995); *Commonwealth* v. *Shea*, 38 Mass. App. Ct. 7, 9 (1995). Contrast *Commonwealth* v. *Blaikie*, 375 Mass. 601, 606 (1978) (mistrial granted in defendant's first trial because statement introduced at trial was significantly different from pretrial information disclosed to defendant); *United States* v. *Pardone*, 406 F.2d 560, 561 (2d Cir. 1969) (failure by prosecution to turn over statement had profound effect on defense strategy).

4. *Alibi testimony.* At a pretrial conference held April 27, 1999, the defense agreed that it would inform the Commonwealth if an alibi defense were to be offered, where the defendant claimed to be at the time of the offenses, and the names of alibi witnesses. See Mass.R.Crim.P. 14(b)(1), 378 Mass. 876 (1979). By letter dated April 28, 2000, the defense also furnished to the assistant district attorney handling the prosecution a list of witnesses that the defense proposed to call. The list included the name of Jose Fernandes, who was described as a witness to the vengeful disposition of Carla's mother toward the defendant. No one on the list was identified as an alibi witness.

When he called Fernandes to testify on October 17, 2000, defense counsel

proceeded to question him about habitual visits he had made to a bakery early in the morning where, Fernandes testified, he regularly encountered the defendant between 6:00 A.M. and 6:15 A.M. That would have placed the defendant away from the place where Carla had testified the molestation occurred, typically between 6:30 A.M. and 7:30 A.M. The prosecutor objected at once that this was alibi testimony of which she had no notice and that it was in violation of the obligation imposed by the pretrial conference report and rule 14(b)(1). Defense counsel responded, "I say it's impossible to present an alibi witness to an indictment that says on divers dates over a seventeen month period." That is the same position the defendant presses on appeal. After some colloquy between the trial judge and defense counsel, the judge observed — not unreasonably — that the relevance of the evidence obtained from Fernandes was "that the defendant was seen at a place different from the place where he was alleged to have committed the offense, that's an alibi."

Notwithstanding defense counsel's disingenuous protestations, the obvious purpose of the Fernandes testimony was to discredit the complainant's account of sexual molestation by generally placing the defendant elsewhere on most days, and therefore, by implication, on the dates of the offenses. The judge, over objection, struck the Fernandes testimony during the course of his charge to the jury. He told the jurors "not to give any consideration" to the Fernandes testimony. "[If] you happen to have taken notes of Mr. Fernandes's testimony, just draw a big 'X', and in your mind draw a big 'X', and if you don't remember, don't try." There was no error. A judge has the discretion to "exclude the testimony of any undisclosed witness offered . . . as to the defendant's absence from . . . the scene of the alleged offense." Mass.R. Crim.P. 14(b)(1)(D), 378 Mass. 877 (1979). *Commonwealth* v. *Porcher*, 26 Mass. App. Ct. 517, 518 (1988). Smith, Criminal Practice and Procedure § 1429 (2d ed. 1983). "Fairness requires a chance to check out the bona fides of an alibi witness." *Commonwealth* v. *Porcher*, *supra* at 519.

*Judgment affirmed.*

*Wayne R. Murphy* for the defendant.
*David Leibowitz*, Assistant District Attorney, for the Commonwealth.