Present: Hassell, C.J., Keenan, Koontz, Lemons, Goodwyn, and Millette, JJ., and Carrico, S.J.

JERRY LYNN COOPER, a/k/a
GERALD LYNN COOPER

OPINION BY
v.  Record No. 080919      SENIOR JUSTICE HARRY L. CARRICO
                           February 27, 2009
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Tried by a jury in the Circuit Court of Alleghany County on a charge of possession of cocaine with intent to distribute in violation of Code § 18.2-248(C), the defendant, Jerry Lynn Cooper, also known as Gerald Lynn Cooper, was convicted and his sentence was fixed at ten years in the penitentiary and a fine of $10,000.00.  The circuit court upheld the conviction and imposed the ten-year penitentiary sentence but suspended the $10,000.00 fine.

In an unpublished order, the Court of Appeals affirmed the conviction.  We granted Cooper an appeal to consider this single assignment of error: "That the ruling by the Court of Appeals that [Cooper's] proposed jury instruction concerning alibi was not required is erroneous."  Finding that the Court of Appeals' ruling was erroneous, we will reverse its judgment.

BACKGROUND

The Commonwealth's evidence showed that in late 2004, Angela Tucker became a paid informant for the Alleghany Highlands Drug Task Force of the Virginia State Police.  Tucker

"never had any charges or pending charges" against her but was "concerned about the drug problem in [her] area" of the Commonwealth and thought she "could help with that." She was paid $100.00 for each drug purchase she made for the police, and at the time she testified at Cooper's trial, she had made sixty such purchases.

At 3:22 p.m. on April 5, 2006, Tucker told Special Agent Eddie Philpot of the Virginia State Police, who was attached to the Alleghany Highlands Drug Task Force, that she might "be able to purchase some crack cocaine" from Cooper, who happened to be her uncle. Special Agent Philpot, accompanied by Detective Winfred Smith of the Bath County Sheriff's Office, who was also a member of the Alleghany Highlands Drug Task Force, gave Tucker money for the purchase of drugs. After searching her, the officers installed "body wire" on her "that broadcasts through a frequency through a listening post" placed on the rear seat of the police vehicle.

Special Agent Philpot and Detective Smith then drove Tucker to a location in the City of Covington near Cooper's residence. Tucker left the car, walked to the residence, and found Cooper at home. She asked him "if he knew where to get any drugs from, well coke." He replied, "yeah," but said he had to make a call to Boomie, a local "coke dealer." He talked to Boomie, but Boomie "never called back." At that point, Jap, a friend of

2

Cooper's, "come up" and "gave [Cooper] a ride." Before Cooper left, Tucker gave him a "hundred dollar bill" she had been given by Special Agent Philpot and Detective Smith.

Cooper could not get the drugs from Boomie but secured them from Van, who had "a reputation for selling drugs . . . in Covington." Cooper returned to Tucker in about ten minutes and "gave [her] the drugs." It was then 4:26 p.m. Cooper departed and Tucker immediately turned the drugs over to Detective Smith, who was sitting with Special Agent Philpot in their police vehicle nearby and from which they had been observing Tucker's movements and listening to her conversations. Upon analysis, the drugs proved to be cocaine.

In defense, Cooper denied that he had sold drugs to Tucker and offered an alibi. He testified and presented testimony from other witnesses that between 3:22 p.m. and 4:26 p.m. on April 5, 2006, he was at work participating in the construction of a pool house at a site in Clifton Forge, a town located some distance from Covington. Cooper's employer and two of his co-workers stated that his work schedule was 8:00 a.m. to 4:30 p.m. daily and that he worked until 4:30 p.m. on April 5, 2006. A witness who shares her home with Cooper testified that he left for work at 8:00 a.m. on April 5, 2006, and that he was not there when she returned home from a meeting about 4:15 p.m., but arrived before she left for work at 9:00 p.m.

At the conclusion of the evidence, Cooper proffered Instruction A, which was refused by the circuit court. Based upon 2 Virginia Model Jury Instructions – Criminal, No. 52.100, at 52-3 (repl. ed. 2008), the proffered instruction read as follows:

> The defendant relies upon the defense that he was not present at the time and place the alleged offense was committed. If, after consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time and place the alleged offense was committed, you shall find him not guilty.

The circuit court refused the instruction on the ground it was not required because other instructions were granted on presumption of innocence, reasonable doubt, and the elements of the offense. The Court of Appeals held that because the circuit court had granted the other instructions, a "separate instruction on alibi was neither necessary nor required, and the trial judge did not abuse his discretion in refusing to give [Cooper's] alibi jury instruction."

## ANALYSIS

As a general rule, the matter of granting and denying instructions does rest in the sound discretion of the trial court. See Daniels v. Commonwealth, 275 Va. 460, 466, 657 S.E.2d 84, 87 (2008); Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384 (1984). "Our 'sole responsibility in reviewing [jury instructions] is to see that the law has been

4

clearly stated and that the instructions cover all issues which the evidence fairly raises.' " Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction. See Commonwealth v. Cary, 271 Va. 87, 91, 623 S.E.2d 906, 907 (2006).

We have visited the appropriateness of alibi instructions in several previous cases starting with Thompson v. Commonwealth, 88 Va. 45, 13 S.E. 304 (1891), and find that we have expressed a variety of views in the law on the subject. In Thompson, involving a charge of robbery, this Court held that it was not error to instruct a jury that "the burden of proving the *alibi* rests upon [the accused]" after the accused had been granted an instruction telling the jury that the Commonwealth "must prove everything essential to the establishment of the charge in the indictment to the exclusion of a reasonable doubt." Id. at 47, 13 S.E. at 305.

In Draper v. Commonwealth, 132 Va. 648, 111 S.E. 471 (1922), a prosecution for conspiracy to commit murder, the Commonwealth sought and received over defense objection an instruction including a statement that "where the accused relies upon or attempts to prove an alibi in his defense, the burden of

5

proving the alibi rests upon him." Id. at 660-61, 111 S.E. at 475. This Court held that while the statement would constitute reversible error standing alone, it did not prejudice the defendant because of the language in the remaining portion of the instruction and in other instructions that were given on presumption of innocence and reasonable doubt. Id. at 665, 111 S.E. at 476. Two paragraphs from an early encyclopedia of law are quoted approvingly in our opinion and are worthy of note. The first reads as follows:

> In 2 Am. & Eng. Enc. (2nd Ed.), page 53, it is said: "Alibi is regarded by some courts as an affirmative defense, but the better doctrine seems to be that it is not a defense in the accurate meaning of the term, but a mere fact shown in rebuttal of the State's evidence; and, consequently, the evidence introduced to support it should be left to the jury, uninfluenced by any charge from the court tending to place it upon a different footing from other evidence in the case."

Id. at 661, 111 S.E. at 475. The second paragraph is from page 56 of the encyclopedia and reads as follows:

> "The true doctrine seems to be that where the State has established a *prima facie* case and the defendant relies upon the defense of *alibi*, the burden is upon him to prove it, not beyond a reasonable doubt, nor by a preponderance of the evidence, but by such evidence, and to such a degree of certainty, as will, when the whole evidence is considered, create and leave in the mind of the jury a reasonable doubt as to the guilt of the accused."

Id. at 663, 111 S.E. at 476.

In Fenner v. Commonwealth, 152 Va. 1014, 148 S.E. 821 (1929), involving a charge of robbery, an instruction was

6

granted containing the same language that was found objectionable in Draper, i.e., "where the accused relies upon or attempts to prove an alibi in his defense, the burden of proving the alibi rests upon him." Id. at 1018, 148 S.E. at 822. This Court criticized the granting of the instruction, stating that "[i]t is strange that prosecuting attorneys continue to ask for this instruction and trial courts continue to give it." Id. However, the Court held that the instruction could not have misled the jury because other instructions told the jury it could not convict unless it believed the defendant guilty to the exclusion of every reasonable doubt. Id. at 1021, 111 S.E. at 823.

In Mullins v. Commonwealth, 174 Va. 472, 5 S.E.2d 499 (1939), a prosecution for attempted rape, a refused instruction stated as follows:

> The court instructs the jury that the evidence introduced by the defendant, that he was not at the scene of the alleged crime, need not have been such as to establish this as a fact, to entitle him to an acquittal; but if its effect has been such as to bring you to that state of mind that you have any reasonable doubt of his presence there, it is as much your duty to find him not guilty in this case, as it would be if you were convinced he was not there or was otherwise not guilty.

Id. at 475, 5 S.E.2d at 500. Reversing for the trial court's failure to grant the instruction, we said: "It is patent that the instruction is a correct statement of the law and that the

7

testimony referred to required it to be given to the jury.  That it was not given is prejudicial error."  Id.

In Noblett v. Commonwealth, 194 Va. 241, 72 S.E.2d 241 (1952), where the defendant was charged with indecent exposure, we held that "[i]n so far as the decision in Mullins . . . approves the form of the instruction [on alibi], it is overruled."  Id. at 248, 72 S.E.2d at 245.  We said, "we now adhere to the same view" we took in Draper and Fenner, when we approved the statement from page 56 of the early encyclopedia of law concerning alibi principles.  Reversing on other grounds, we said that "at a new trial the defendant will be entitled to an instruction on alibi which conforms to the principles which we have here stated."  Id.

In Johnson v. Commonwealth, 210 Va. 16, 168 S.E.2d 97 (1969), a statutory burglary case, we said that "in order to require the giving of an instruction on alibi there must be evidence that the accused was elsewhere than at the scene of the crime at the exact time or for the entire period during which it was or could have been committed."  Id. at 20, 168 S.E.2d at 100.  We held that an alibi instruction was properly refused because  "the evidence offered in support of the defendant's claim of alibi is so lacking in the required proof of his absence from the scene at the time of the commission of the

8

crime that the trial court properly refused to grant the requested instructions." Id.

In Minor v. Commonwealth, 213 Va. 278, 191 S.E.2d 825 (1972), the defendant, charged with feloniously and knowingly receiving money from the earnings of a female engaged in prostitution, was denied an alibi instruction worded in the language approved in Mullins but disapproved in Noblett. We said that "a separate instruction on alibi was neither necessary nor required" because "the jury was fully and completely instructed on presumption of innocence and reasonable doubt" and was further told that " 'if there is any reasonable doubt that the accused did knowingly receive such money . . .' or if they had any reasonable doubt of the defendant's guilt of the crime charged against her 'on the whole case,' they should acquit her." Id. at 281, 191 S.E.2d at 827. We stated further that "to the extent that Mullins and Noblett are in conflict with this holding, they are expressly overruled." Id.

In Crabbe v. Commonwealth, 221 Va. 419, 270 S.E.2d 727 (1980), the defendant, on trial for three robberies, was denied an alibi instruction similar to the one approved in Mullins and disapproved in Noblett. We upheld the denial. Citing Minor, we said that "[w]e reaffirm the rule that, when the jury is properly instructed on the presumption of innocence and reasonable doubt, 'a separate instruction on alibi [is] neither

9

necessary nor required.' " Id. at 421, 270 S.E.2d at 728.

"Moreover," we said, "the jurors were told in each of three instructions . . . that, in order to convict, they were required to find that Crabbe 'was present, aiding and abetting [his accomplice] in the commission of such [crimes].' " Id.

Finally, in Bassett v. Commonwealth, 222 Va. 844, 284 S.E.2d 844 (1981), where the death penalty was imposed for murder during the commission of robbery, the trial court granted Instruction 2, an alibi instruction in the exact same wording as Instruction A, involved here. The defendant complained of the instruction on appeal, "arguing that it confused the jury as to the standard of proof required to establish an alibi." Id. at 856, 284 S.E.2d at 852. We disagreed, stating that "[a] jury objectively reading the instruction complained of could not be misled, because nowhere does it require proof of alibi beyond a reasonable doubt or even by a preponderance of the evidence." Id. at 857, 284 S.E.2d at 852.

This brings us to the point of decision. In making our decision, we first question the efficacy of this Court's approval in Draper of the statement that "[a]libi . . . is not a defense in the accurate meaning of the term, but a mere fact shown in rebuttal of the State's evidence." 132 Va. at 661, 111 S.E. at 475. We now hold to the contrary. Black's Law Dictionary (8th ed. 2004) 79 defines the word "alibi" as "[a]

10

defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." And the same dictionary at page 451 defines the word "defense" as "[a] defendant's stated reason why the plaintiff or prosecutor has no valid case; esp., a defendant's answer, denial, or plea <her defense was that she was 25 miles from the building at the time of the robbery>." Hence, we will hereafter treat alibi as a defense in the accurate meaning of the term.

We also question the efficacy of this Court's approval in Draper of the further statement that "the evidence introduced to support [an alibi] should be left to the jury uninfluenced by any charge from the court tending to place it upon a different footing from other evidence in the case." 132 Va. at 661, 284 S.E.2d at 475. We now hold to the contrary. Rule 3A:11, which deals with discovery and inspection in criminal cases, provides in subparagraph (c)(2) as follows:

> (c) Discovery by the Commonwealth.–If the court grants relief sought by the accused under clause (ii) of subparagraph (b)(1) or under subparagraph (b)(2) of this Rule, it shall, upon motion of the Commonwealth, condition its order by requiring that:
>
> . . . .
>
> (2) The accused disclose whether he intends to introduce evidence to establish an alibi and, if so, that the accused disclose the place at which he claims to have been at the time of the commission of the alleged offense.

11

Other than insanity or feeblemindedness, Rule 3A:11(c)(3), alibi is the only defense that must be disclosed pretrial by the accused in a criminal case. Thus, subparagraph (c)(2) has placed alibi on a different footing from other evidence in the case, and it should be left to the jury in an appropriate instruction on the subject, in addition to instructions on presumption of innocence and reasonable doubt.

Furthermore, in view of our changed consideration of the alibi concept, we question the wisdom of continuing our rule that the matter of granting or refusing alibi instructions rests in the sound discretion of the trial court. Johnson makes clear that an alibi instruction should be granted when there is "evidence that the accused was elsewhere than at the scene of the crime at the exact time or for the entire period during which it was or could have been committed." 210 Va. at 20, 168 S.E.2d at 100. Yet, as a review of our decisions will reveal, alibi instructions have been granted in some cases and refused in others when no discernible difference is apparent. Eliminating judicial discretion will promote uniformity where uniformity is desirable, and it is desirable in this instance. Hereafter, the rule will be: grant an alibi instruction when the evidence described in Johnson is present, refuse when the evidence is absent.

CONCLUSION

Cooper's alibi evidence fully satisfied the Johnson test. We approved the wording of Instruction A in Bassett, 222 Va. at 856-57 n.2, 284 S.E.2d at 852 n.2, and no reason has been advanced to require withdrawal of that approval. Accordingly, the instruction should have been granted. Because it was refused, we will reverse the judgment of the Court of Appeals, vacate Cooper's conviction, and remand the case to the Court of Appeals for further remand to the circuit court for a new trial with the jury instructed on alibi, provided the evidence remains substantially the same, the instruction is in proper form, and Cooper requests it.

Reversed and remanded.