UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Athey and Chaney
Argued at Norfolk, Virginia

HEATH NICHOLAS MOISON

                                                   MEMORANDUM OPINION* BY
v.        Record No. 1038-21-1                     JUDGE CLIFFORD L. ATHEY, JR.
                                                            AUGUST 2, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

J. Barry McCracken, Assistant Public Defender, for appellant.

Craig W. Stallard, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial in the Circuit Court for the City of Norfolk ("trial court"), Heath

Nicholas Moison ("Moison") appeals three convictions for aggravated sexual battery as a parent,

in violation of Code § 18.2-67.3, and four convictions for taking indecent liberties with a child as

a custodian, in violation of Code § 18.2-370.1(A).  On appeal, Moison contends the following:

(1) the trial court erred in excluding testimony on the ground that it was an alibi not properly

disclosed before trial pursuant to Rule 3A:11(d)(2); (2) the trial court erred in finding that there

was sufficient evidence to support his convictions; and (3) the trial court erred by instructing the

jury that they were entitled to infer that every person intends the natural and probable

consequences of his acts.  For the following reasons, we affirm.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

Moison and Nikita Colvard ("Colvard") had two children together. B.M. was born in 2003, and K.M was born in 2005. Moison and Colvard ended their relationship while Colvard was expecting K.M. Moison initially continued his parental relationship with the girls by caring for them while Colvard was at work. However, when K.M. was about a year old, one of the girls nearly drank bleach while in his care. As a result, Colvard temporarily ceased letting the girls visit with Moison. Around 2008, Colvard began permitting him to visit with the girls again. Moison has continuously lived in Norfolk with his mother and stepfather, and Colvard permitted the visitation to progress over time from having the girls at his mother's home every Sunday to having visitation with them every other weekend for the entire weekend.

In 2015, B.M. stopped wanting to go to her paternal grandmother's home for visitation with Moison. At trial, Colvard testified that around 2009, B.M. and K.M. did not want to wear dresses anymore and wore pants almost exclusively. According to Colvard, the girls wore sweaters even in the worst summer heat. B.M., who was about six years old at the time, "wanted nothing to do with bathing suits . . . [or] shorts." Colvard further testified that at "Halloween she would cry because she'd have to wear a costume that looked girlish with a dress of some sort. She wanted nothing to do with any of that." This was a "sudden change." According to Colvard, around 2010, K.M, who had "always loved dressing up," changed also and "eventually became this tomboy who no longer wanted to dress up" and constantly wore "long shorts [and] oversized shirts."

Both girls testified at the trial that Moison began sexually abusing them during their overnight visits at their grandmother's home where they slept together in a bedroom. B.M. testified that Moison would rub her back underneath her shirt and would also "mess with [her] breasts" and "put his mouth on them." She further testified that Moison would "touch [her] over

[her] clothes or over [her] pants in [her] vagina or buttocks area." B.M. explained that her father would start to abuse her while she was still asleep, but when she awoke, she would turn away from him so that he would leave her alone. She also confirmed that the episodes occurred almost every time she spent the night at her paternal grandmother's house and that he touched her vaginal area "a few times." She stated that she knew it was her father because of the size of his hands—Moison is six feet and six inches tall—and because she would see him in the room.

Consistent with the testimony of her sister, K.M testified that when she was eight or nine years old, Moison began touching her breasts, vagina, and stomach under her clothes during overnight visitation at her grandmother's home. She explained that if she wore a nightgown, he would lift it; if she wore pants, he would try to pull them off. She also stated that Moison would lift the covers on her side of the bed so he could gain access. Like her sister, when the touching woke her, she would close her eyes and turn away to try to get him to stop. K.M. saw his face during at least some of these incidents. Again, like her sister, she confirmed that the episodes would occur "every time we would go over there" and that Moison would not speak to her during the incidents, which were short. The abuse would stop when K.M. would "physically get up and leave or go to the bathroom."

Both girls testified that the sexual abuse continued until they reported the abuse to their mother after an incident in November of 2018. That incident occurred when they were visiting with Moison for the weekend and all three went to a birthday party at the home of one of Moison's friends, a woman named Laurie Lee ("Laurie"). While at the birthday party, the girls fished, played with a dog, and ate smores. When Moison became too drunk to drive them home, they stayed the night. Around 1:00 a.m., the girls went to sleep on couches in the living room. B.M. testified that she woke up around 5:00 a.m. and her father was "laying down on the ground next to me and rubbing my back." He tried to put his hands inside her pants on her private parts

and when she turned away, he forcefully tried to get her to turn back around. She then saw him move over to K.M. and put his hands beneath her blanket. K.M. testified that she woke up around 3:00 or 4:00 a.m. to her father's hand fondling her breast and side. She tried to move around so that he would stop, but he continued. She eventually got up to go to the bathroom. When she came back, she saw B.M. awake and assumed he had fondled her sister after she left the room. B.M. texted several friends concerning the abuse and was told by friends that she ought to report him.

Moison and the girls left Laurie's home around 9:00 a.m. the next morning and when they arrived at their grandmother's house, the girls contacted their mother and asked her to pick them up. After spending the afternoon at a park near their home, B.M. wrote a note to her mother explaining what had happened at the birthday party and that Moison had been sexually abusing them since they were young children. Colvard read the note and spoke with the girls about their allegations. K.M. testified that she had delayed reporting the abuse to her mother because she did not think she would be believed. The next day, at a child support hearing at which Colvard was seeking child support from Moison, she spoke with her attorney. The attorney recommended that she contact Child Protective Services ("CPS"). Colvard then contacted CPS and also obtained a protective order against Moison on behalf of the girls. After reporting Moison's abuse and ceasing all contact, the girls "began to flourish," and Colvard "saw genuine love in their face[s]."

Jessica Arrington was qualified as an expert witness in forensic interviewing and delayed reporting of child sexual abuse.[1] She testified that delayed disclosures of child sexual abuse are not unusual and that children frequently do not remember all the details of traumatic experiences.

---

[1] At the time of trial, Arrington had worked as a forensic interviewer for two and a half years. Her current employment was with an advocacy center at a children's hospital. Before that, she was a CPS investigator.

At the conclusion of the Commonwealth's evidence, Moison moved to strike, arguing there was insufficient evidence to prove he touched them in bed because the girls' testimony was incredible. He further argued that even if he did touch them, there was insufficient evidence of his intent to sexually gratify himself. The Commonwealth responded that the girls' testimony was not inherently incredible and that a grown man repeatedly touches the intimate parts of a female in the circumstances and manner described by the girls for only one purpose—sexual gratification. The trial court denied the motion to strike.

Moison called several witnesses in his defense. The first was Michelle Guzman ("Guzman"), Moison's longtime girlfriend and the mother of his other children. She testified that she never saw any reason to report Moison even though he, K.M., and B.M. frequently visited her home. Guzman testified that after their father was no longer in their lives, K.M and B.M. started living a party lifestyle and became alienated from her children. Shelby Guzman ("Shelby"), the half-sibling of K.M. and B.M., testified that the relationships between her and the girls broke down because of time and distance when Shelby went to high school and then to college. K.M. and B.M.'s paternal grandmother testified that she would have woken up if anyone had been moving around in the house during bedtime hours and that she did not believe her son committed any of the crimes of which he was accused.

Laurie, the friend who had hosted the birthday party where Moison allegedly abused the girls, testified that the party was held the evening of November 3, 2018. She confirmed the girls' activities during the party. Next, the defense attempted to elicit testimony from her that she and Moison were outside in the yard together until approximately 6:00 a.m. and then watched a movie together in the home from approximately 6:00 a.m. to 7:30 a.m. The Commonwealth objected to the admission of the expected testimony into evidence because it was intended to prove that Moison could not have committed the alleged abuse at Laurie's home. The

Commonwealth suggested that it was an alibi for which the defense had not given proper notice under Rule 3A:11. The defense conceded it had not given notice of the expected testimony but argued that it was not alibi evidence. The court held that the expected testimony was an alibi defense, accepted a proffer of the proposed testimony, sustained the objection, and directed the jury to disregard the testimony that had already been elicited on that point.

Moison objected to Jury Instruction 14, a Virginia Model Jury Instruction. That jury instruction reads: "You may infer that every person intends the natural and probable consequences of his acts." Moison contended that the evidence adduced at trial did not support giving Jury Instruction 14. He also argued that the instruction unlawfully shifted the burden of proof to him as the defendant. The trial court overruled the objection and instructed the jury accordingly.

Moison also renewed his motion to strike, arguing that there was insufficient evidence of his intent to sexually molest the girls or sexually gratify himself. He argued that the girls' testimony was inherently incredible. The trial court rejected his arguments. The jury convicted Moison on all charges. This appeal followed.

## II. STANDARDS OF REVIEW

We "review[] a trial court's evidentiary rulings for abuse of discretion." *Graves v. Shoemaker*, 299 Va. 357, 361 (2020) (citing *Hyundai Motor Co. v. Duncan*, 289 Va. 147, 155 (2015)). "Only when reasonable jurists could not differ can [an appellate court] say an abuse of discretion has occurred." *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc,* 45 Va. App. 811 (2005)). "[T]he phrase 'abuse of discretion' means that the trial court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *Ellis v. Commonwealth*, 68 Va. App. 706, 711 (2018) (alteration in original)

(quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)). In conducting this analysis, to the extent that the trial court's admissibility decision was based on an interpretation of Rule 3A:11, we review that interpretation *de novo*. *See Cousett v. Commonwealth*, 71 Va. App. 49, 57 (2019).

In reviewing challenges to the sufficiency of the evidence, we give deference to the fact-finder. The trier of fact is required "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brown v. Commonwealth*, 68 Va. App. 44, 55 (2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A judgment can be overturned for insufficient evidence only if it was "plainly wrong or without evidence to support it." *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). The evidence is sufficient to support the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496-97 (2015)). Just because another trier of fact "might have reached a different conclusion" about what the evidence showed does not mean that this "[C]ourt [can] say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt." *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018) (first alteration in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

Whether to grant or deny a proffered jury instruction "generally rests 'in the sound discretion of the trial court.'" *Graves v. Commonwealth*, 65 Va. App. 702, 707 (2016) (quoting *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009)). Jury instructions must correctly state the law and "cover all issues which the evidence fairly raises." *Watson v. Commonwealth*, 298 Va. 197, 207 (2019) (quoting *Payne v. Commonwealth*, 292 Va. 855, 869 (2016)). We review *de novo* statements of the law. *Id.* (citing *Payne*, 292 Va. at 869).

III. ANALYSIS

Moison first argues that the trial court abused its discretion in excluding Laurie's testimony as alibi evidence for which proper notice had not been given. Second, he argues that the evidence was insufficient to convict him because the girls' testimony was inherently incredible and there was no evidence that even if he touched his daughters that he did so for sexual gratification. Third, he contends that the trial court erred in giving Jury Instruction 14.

A. *Alibi Evidence*

Rule 3A:11(d)(2) provides that the circuit court must, when it has ordered discovery, order the defendant to "[d]isclose whether the accused intends to introduce evidence to establish an alibi and, if so, disclose the place at which the accused claims to have been at the time the alleged offense was committed." The trial court entered discovery orders requiring Moison to "disclose whether counsel intends to introduce evidence to establish an alibi, and, if so, . . . at what place [Moison] claims to have been at the time of the commission of the alleged offense." Moison was required to make the disclosure at least ten days before trial. The circuit court applied Rule 3A:11(d)(2) and found that Moison failed to give timely notice that he intended to call Laurie to the stand to testify that he was not in the room with the victims during the time the abuse allegedly occurred in her living room. Moison maintains that the trial court abused its discretion in ruling that this portion of her testimony was alibi evidence. We disagree.

An "alibi" is "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." *Cooper*, 277 Va. at 385 (quoting *Alibi*, *Black's Law Dictionary* (8th ed. 2004)). In the context of an instruction, the Supreme Court noted that "an alibi instruction should be granted when there is "evidence that the accused was elsewhere than at the scene of the crime at the exact time or for

the entire period during which it was or could have been committed."[2] *Id.* (quoting *Johnson v. Commonwealth*, 210 Va. 16, 20 (1969)). Based on the definition of "alibi," we conclude that in the context of an alibi the relevant location is simply one that presents a defense of "physical impossibility." *See id.*

Here, the trial court did not abuse its discretion in holding that the proffered testimony was alibi evidence that should have been disclosed before trial. Moison admitted that the significance of the evidence was not just that Moison did not assault the girls that night in the living room, but that he *could not have sexually assaulted them that night in the living room* because he was not in the room with them all night. That is, it was physically impossible for him to commit the crimes during the time they allegedly occurred because he was in a place other than the place where the alleged offenses were committed during the relevant time period. While allowing her to testify generally, the trial court excluded any testimony from Laurie about Moison's whereabouts from the time the girls went to sleep until they got up. The proffered testimony was that Moison was outside with Laurie from the time the girls went inside and went to sleep until about 6:00 a.m., and that around 6:00 a.m. she and Moison went inside together and watched a movie until 7:30 a.m.[3] Because Laurie's testimony would have been that Moison was

---

[2] Moison argues for the first time on appeal that the testimony should have been admitted to impeach the girls' testimony. He did not raise that argument below and therefore waived it under Rule 5A:18. In any event, alibi evidence nearly always impeaches the credibility of at least one witness, and Rule 3A:11(d)(2) nevertheless requires it to be disclosed before trial. *See McCarter v. Commonwealth*, 38 Va. App. 502, 506-07 (2002) ("To impeach a witness by contradiction, the opposing party introduces 'extrinsic evidence' to show that the witness' testimony may not be accurate." (citing Charles E. Friend, *The Law of Evidence in Virginia* § 4-9 (5th ed. 1993))).

[3] The record indicates that testimony to the latter was excluded because it was essentially Laurie "vouching for him being in a different room or in a different location of the home, not with the girls." The trial court ruled that the relevant time frame for the alibi ended "[o]nce the girls woke." To the extent that the court may have excluded evidence of Moison walking through the room where the girls slept and to the extent that exclusion may have been error, it

not in the room with the victims until 7:30 a.m., her proffered testimony is alibi. This is true whether the time the crime was committed is defined in terms of the times given by the girls (about 3:00 a.m. to about 5:00 a.m.) or, as the trial court seems to have defined it, in terms of the time from when the girls went to sleep to the time they got up.

When Moison sought to present the testimony to the trial court, its significance was not only that Laurie saw Moison the whole night and that she did not see him commit the abuse, but also that he could not have possibly committed the alleged offenses that night because he was not present inside the house the entire time. In light of the record, a reasonable jurist could have concluded that the proffered testimony was a "defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time." *Cooper*, 277 Va. at 385 (quoting *Alibi*, *Black's*, *supra*). Therefore, under Rule 3A:11(h), the trial court did not abuse its discretion in determining that the proffered testimony was alibi testimony.

The appellant alternatively argues that the trial court abused its discretion by excluding the testimony as the remedy for the Rule 3A:11 violation. Rule 3A:11(h) leaves the remedy for non-compliance within the trial court's discretion. *See generally Lane v. Commonwealth*, 20 Va. App. 592, 595 (1995) (affirming admission of Commonwealth's evidence despite non-disclosure after the defendant declined the offer of a continuance or to move for a mistrial). The appellant here had the opportunity to present this testimony but failed to provide either the requisite notice or any notice at all.[4] Instead, he presented the witness testimony without giving

---

was harmless. *See generally Anderson v. Commonwealth*, 282 Va. 457, 466 (2011) (conducting harmless error review).

[4] Although defense counsel stated that the witness did not come forward until only a week before trial, counsel did not give notice or make a motion to continue when the information became available. *See* Rule 3A:11(h) (requiring prompt disclosure of any additional qualifying material discovered before or during trial).

- 10 -

the Commonwealth the chance to prepare for his alibi defense. The question regarding the remedy is not what this Court would do, but whether the trial court acted properly within its discretion. Exclusion of the testimony is one remedy available to the court. *See* Rule 3A:11(h). Although harsh, we cannot say that the exclusion of the testimony was an abuse of discretion under these circumstances.[5] *See generally Commonwealth. v. Freitas*, 794 N.E.2d 636, 639 (Mass. App. Ct. 2003) (upholding exclusion of testimony in circumstances similar to this case).

Finally, the dissent raises *sua sponte* the issue of whether the exclusion of evidence was unconstitutional. Pursuant to Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." To this end, an objection must be both timely and specific. *See Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). Such an objection "gives the opposing party the opportunity to meet the objection at that stage of the proceeding." *Id.* at 744 (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)). It also "afford[s] the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals." *Williams v. Commonwealth*, 57 Va. App. 341, 347 (2010).

The appellant did not argue below that the application of the exclusionary remedy violated his constitutional right to present evidence in his defense. *See Lomax v. Commonwealth*, 228 Va. 168, 172 (1984) (recognizing that "a court must not exercise its discretion in a manner which would deny an accused a fair and impartial trial or deprive him of his constitutional right 'to call for evidence in his favor.'" (quoting Va. Const. art. I, § 8)). Nor does he make this argument on brief. The appellant therefore did not preserve this particular

---

[5] Further, Moison did not ask the trial court for a delay to allow him to satisfy the requirements of Rule 3A:11(a)(2) and the discovery orders. *See* Rule 5A:18; *Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020).

argument, and we do not consider it. *See, e.g.*, *McDaniel v. Commonwealth*, 73 Va. App. 299, 313-14 (2021) (applying Rule 5A:18); *Ferguson v. Commonwealth*, 71 Va. App. 546, 556-57 (2020) (applying Rule 5A:20).

## B. *Sufficiency of the Evidence*

Moison also argues that the girls' testimony was inherently incredible and that the evidence against him was insufficient to convict him. He specifically contends that the evidence was insufficient to show that he either intentionally touched the girls or that, even assuming he touched them, that he intended to sexually gratify himself. We disagree.

An "appellate court does not 'retry the facts,' reweigh the evidence, or make its own determination of the 'credibility of the witnesses.'" *Yahner v. Fire-X Corp.*, 70 Va. App. 265, 273 (2019) (quoting *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019)). The inconsistencies between the testimony of various witnesses at the trial was solely an issue to be weighed by the trier of fact. *See Crump v. Commonwealth*, 20 Va. App. 609, 619 (1995). Whether the girls' grandmother's house had carpets, whether the girls drifted apart from their step-siblings due to their allegations of abuse or the effect of moving on to college, whether Moison went outside to smoke in his underwear or in his shorts, and whether the girls wanted to be free from their father's negative attitude toward their boyfriends—these were issues for the jury to consider and resolve based on the evidence presented to it.

There is a narrow exception to the deference that an appellate court gives to the trier of fact on issues relating to witness credibility. That exception is when a court determines that a witness's testimony is inherently incredible. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019). Testimony is inherently incredible only if it is "so manifestly false that reasonable men ought not to believe it" or if it is "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." *Gerald v. Commonwealth*, 295 Va.

- 12 -

469 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)). Internal contradictions such as those raised by the appellant do not render a witness's testimony inherently incredible. *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019).

Here, the girls' testimony was not inherently incredible. An expert witness testified that delayed disclosure is common in cases of child sexual abuse. The girls testified that they enjoyed going over to their grandmother's house because it involved visiting their grandmother, playing with her dog, going to Busch Gardens with their father, and spending time with their step-siblings. They also testified that they loved their father. B.M. reported the abuse when she discovered that K.M. was also being abused, and K.M. reported when she realized that their mother was prepared to believe B.M. Neither their motives for failing to report for so long nor their eventual bases for reporting were so unusual or bizarre that they would render their testimony inherently incredible as a matter of law. *See Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991) (holding that the victim's delay in reporting did not render his testimony inherently incredible but was instead a factor for the jury to consider). Nor is it "incredible" that their father could abuse them and neither sister realize that the other was subject to the same abuse. *See Fisher v. Commonwealth*, 228 Va. 296, 299 (1984) (noting due to the "clandestine nature" of sex offenses, usually only the perpetrator and victim witness the crime). The record establishes that the abuse took place at night, would begin while they were asleep, and their father would say nothing during the episodes. An abuser may use a similar method to abuse two different victims, especially sisters to whom he had access at the same times and places. In conclusion, the evidence was sufficient to prove the appellant's intent to abuse the girls.

Likewise, the evidence was sufficient to prove that the appellant intended to sexually gratify himself. *See* Code § 18.2-307.1 (listing lascivious intent as an element of the offense). There was testimony that he repeatedly touched their intimate parts and the clothing covering

- 13 -

their intimate parts and that he had to remove bed covers to do so. It was not unreasonable for the jury to conclude a grown man touching the intimate parts of a female has done so for sexual gratification purposes. *See Chapman v. Commonwealth*, 56 Va. App. 725, 740 (2010) (recognizing that a jury must apply common sense to the evidence presented). The abuse began in 2009 and continued for half a decade. B.M. said she was touched on at least fifty different occasions. This evidence allows the inference that Moison touched the girls for the purpose of sexually gratifying himself.

For these reasons, the evidence was sufficient to support the convictions.

## C. *Jury Instruction*

Moison also argues that the trial court erred in giving Jury Instruction 14. He suggests that it is unconstitutional and was not supported by more than a scintilla of evidence. We disagree.

First, the evidence fairly raised the issue of whether Moison intended the natural and probable consequences of his acts. Lascivious intent, an element of the offense, was at issue, and circumstantial evidence was required to prove it. In this context, "lascivious" means "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." *Kolesnikoff v. Commonwealth*, 54 Va. App. 396, 405 (2009) (quoting *Moyer v. Commonwealth*, 33 Va. App. 8, 28 (2000) (*en banc*)). The evidence was that Moison touched the intimate parts of both girls. Certainly, sexual gratification can be a natural and probable consequence of a man touching the intimate parts of a female. The challenged instruction simply informed the jury that it could use its common sense to infer that Moison's conduct evinced an intent to be sexually gratified. The instruction accurately reflected the law and was relevant to the jury's determination of the element of intent. *See Howsare v. Commonwealth*, 293 Va. 439, 443-44 (2017) (upholding a jury instruction on intent).

- 14 -

Second, Moison incorrectly argues that the instruction impermissibly shifted the burden of proof to him. He admits that the instruction at issue here was taken directly from the Virginia Model Jury Instructions and that it was approved by this Court in *Kelly v. Commonwealth*, 8 Va. App. 359, 373-74 (1989). Moison further recognizes that the Supreme Court upheld a very similar instruction in *Schmitt v. Commonwealth*, 262 Va. 127 (2001). He goes an additional step and admits that the Supreme Court has twice upheld this instruction against an identical challenge. *See Thomas v. Commonwealth*, 279 Va. 131, 166 (2010); *Morva v. Commonwealth*, 278 Va. 329 (2009). Finally, the appellant candidly admits that his argument is not a new one but is instead based on *Sandstrom v. Montana*, 442 U.S. 510 (1979), a case analyzed and interpreted by the Virginia cases he recognizes previously ruled against his current position. It is clear that the existence of binding precedent precludes us from finding error here. *See, e.g.*, *Anderson v. Commonwealth*, 48 Va. App. 704, 712 n.2 (2006).

For these reasons, the trial court did not abuse its discretion by instructing the jury that it could infer that a person intends the natural and probable consequences of his acts.

## IV. CONCLUSION

The trial court did not abuse its discretion in excluding alibi testimony which Moison failed to properly disclose before trial pursuant to Rule 3A:11(d)(2). Also, the evidence was sufficient to show that Moison repeatedly touched the girls' intimate parts and that he intended to sexually gratify himself in so doing. Finally, the jury instruction was constitutional and supported by more than a scintilla of evidence. Accordingly, this Court affirms the convictions.

*Affirmed.*

- 15 -

Chaney, J., dissenting.

The trial court erred in (i) ruling that the testimony of defense witness Laurie Lee ("Ms. Lee") constituted alibi evidence for purposes of the notice-of-alibi requirement under Rule 3A:11 and (ii) excluding Ms. Lee's testimony as a sanction on Moison for not giving the Commonwealth pretrial notice of the content of Ms. Lee's anticipated testimony. Because the trial court's errors were not harmless, I respectfully dissent from this Court's judgment affirming Moison's convictions.

## I. STANDARDS OF REVIEW

This Court's interpretation of the Rules of the Supreme Court, including its construction of the "notice-of-alibi rule" in Rule 3A:11, is a question of law that we review *de novo*. *See Walker v. Commonwealth*, 289 Va. 410, 415 (2015) (citing *LaCava v. Commonwealth*, 283 Va. 465, 471 (2012).

"The remedial relief to be granted by the trial court following a discovery violation . . . is within the trial court's discretion and will not be disturbed on appeal unless plainly wrong." *Moreno v. Commonwealth*, 10 Va. App. 408, 420 (1990).

## II. THE EXCLUDED TESTIMONY

The circuit court excluded the testimony of defense witness Laurie Lee, who resided with her husband and sister in the house where Moison's daughters were allegedly abused in November 2018. Moison and his daughters attended a weekend party at Ms. Lee's home and stayed overnight. Moison's daughters alleged that Moison sexually abused them while they were sleeping on couches in Ms. Lee's living room.

In his defense, Moison called Ms. Lee. She testified that she was in her home's backyard with Moison and two other guests when Moison's daughters went inside with her sister around

- 16 -

3:00 a.m. Ms. Lee further testified that she and Moison remained in the backyard until 6:00 a.m. when they went into the house together.

The Commonwealth objected to Ms. Lee's testimony. At a sidebar conference, the Commonwealth contended that Ms. Lee was an alibi witness and that Moison did not provide the Commonwealth the required notice of an alibi defense. Moison, by counsel, responded, "He's at the same place the girls were. Alibi is if he's somewhere else is my understanding, and he's right there with everybody else. The girls testified he was there." The circuit court noted that Ms. Lee testified that Moison "was outside until 6:00 a.m. and the girls put him in the living room on the floor in the early hours before dawn. Two to three is what I think they said." Then the court ruled, "So it is an alibi."

Moison, by counsel, responded that "Laurie Lee wasn't available to me until about a week ago, about a week ago, I think, and so I did not know this is what she was going to testify to because I didn't think she was available. And then when she came to me, then she told me this information, and there would not have been enough time even to do an alibi if this is an alibi." The circuit court found that Moison did not give adequate notice of the alibi, and the court ruled that the alibi evidence would be stricken.

Subsequently, the circuit court asked Moison's counsel what the next question for Ms. Lee was going to be. Moison's counsel replied, "What did you do when you and [Moison] were in the house?" The Commonwealth objected again and argued, "She's vouching for him being in a different room or in a different location of the home, not with the girls." The circuit court again ruled "it's an alibi witness," and "sustain[ed] the Commonwealth's objection to that group of questions, and [directed that] the next question won't have anything to do with where he was according to this witness."

Moison's counsel proffered that if Ms. Lee's testimony had not been excluded, her testimony would have included the following: "[A]t 6:00 a.m. Miss Lee went in the house with Mr. Moison. When they entered the house, they could see where the girls were sleeping. They went to watch a movie until 7:30 in the morning." The circuit court directed, "Nothing about the movie."

The circuit court advised the jury that the court sustained the Commonwealth's objection, and the court directed the jury "to disregard the last piece of testimony that Miss Lee gave as not evidence in the case and should not be considered by you."

### III. THE CIRCUIT COURT ERRED IN EXCLUDING MS. LEE'S TESTIMONY.

### A. Ms. Lee's Testimony Is Not Alibi Evidence.

The trial court's exclusion of Ms. Lee's testimony was plainly wrong because Ms. Lee's testimony was not offered to establish an alibi; therefore, the notice-of-alibi requirement under Rule 3A:11 does not apply. The circuit court's discovery order pursuant to Rule 3A:11 required that "[t]he defendant shall disclose to the Commonwealth whether the defendant intends to offer a **<u>defense of alibi</u>**, and, if so, *disclose the place* at which the defendant claims to have been at the time the alleged offense was committed."[6] (second emphasis added). As the Supreme Court of Virginia has noted, "alibi" is defined as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time.'"

---

[6] This discovery order was entered on September 23, 2020, and it included both Case Numbers CR19000542 and CR19001394. A discovery order was previously entered in each of these cases on April 4, 2019, and August 8, 2019, respectively. Each of these discovery orders required that Moison

> through counsel, disclose whether counsel intends to introduce evidence to establish an alibi, and, if so, that the accused disclose at what place the accused claims to have been at the time of the commission of the alleged offense, and said disclosure to be made no later than ten (10) days prior to trial of said matter.

*Cooper v. Commonwealth*, 277 Va. 377, 384 (2009) (alteration in original) (quoting *Black's Law Dictionary* 79 (8th ed. 2004)). Ms. Lee's testimony was not offered to establish an alibi because her testimony placed Moison at the place of the alleged November 2018 crimes., i.e., Ms. Lee's residence. Moison's defense was not that it was physically impossible for him to move from the backyard to the living room during the time when the alleged crimes occurred, but that he did not do so. Moison's defense acknowledged that he was at Ms. Lee's place when the alleged sex offenses allegedly occurred, but that he was there with Ms. Lee and was engaged in non-criminal activity throughout the time period when he allegedly abused his daughters.

There was no mention of place in the proffered testimony that Ms. Lee and Moison watched a movie from around 6:00 a.m. to 7:30 a.m. The disallowed question related to this proffer was "What did you do when you and [Moison] were in the house?" This question was intended to elicit information about Moison's activities, not his location. If believed, Ms. Lee's testimony would have established that she was at her home with Moison from 3:00 a.m. to 7:30 a.m., and that Moison did not abuse his daughters during that time period. The essence of Moison's defense was based on his activities during the relevant time period, not on a claim that he was elsewhere. Moison acknowledged that he was at the place of the alleged crime, but he claimed that he was there watching a bonfire and watching a movie at the time of the alleged sexual abuse. Therefore, the trial court erred in excluding this non-alibi evidence as a sanction on Moison for not giving the Commonwealth notice of an alibi.

B. Exclusion of Ms. Lee's Testimony Was Plainly Wrong.

Assuming *arguendo* that Ms. Lee's testimony included alibi evidence for purposes of the notice-of-alibi requirement, the trial court erred in excluding Ms. Lee's testimony. Although "[t]he relief to be granted upon a violation of Rule 3A:11 is within the discretion of the trial court," *Frye v. Commonwealth*, 231 Va. 370, 383 (1986), the exclusion of Ms. Lee's testimony was plainly wrong

because the trial court failed to "giv[e] due regard to the right of the accused to call for evidence in his favor . . . [,]" *id.* at 383-84 (citing Va. Const. art. I, § 8; *Lomax v. Commonwealth*, 228 Va. 168, 172 (1984) ("A court must not exercise its discretion in a manner which would deny an accused a fair and impartial trial or deprive him of his constitutional right 'to call for evidence in his favor.'" (quoting Va. Const. art. I, § 8)); *Gilchrist v. Commonwealth*, 227 Va. 540, 546-47 (1984)).

"Few rights are more fundamental than that of an accused to present witnesses in his own defense[.]" *Taylor v. Illinois*, 484 U.S. 400, 408 (1988) (citing *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (recognizing a defendant's right to present witnesses in his favor grounded in the Compulsory Process Clause of the Sixth Amendment). However, a defendant may forfeit his right to present evidence in his favor "through purposeful non-cooperation." *See Ferrara v. Commonwealth*, 299 Va. 438, 448-49 (2021) (citing *Williams v. Florida*, 399 U.S. 78, 81-82 (1970)). In *Williams*, the United States Supreme Court held that the exclusion of alibi evidence is in accord with due process when a defendant willfully flouts the notice-of-alibi rule. *See Williams*, 399 U.S. at 81-82. Here, the evidence does not support a finding that Moison willfully violated the notice-of-alibi rule, nor does the Commonwealth allege a willful violation. Moison credibly claimed that he did not consider Ms. Lee's testimony to be alibi evidence,[7] and the trial court did not find otherwise. Absent a finding supported by the evidence that Moison willfully failed to provide alibi notice of Ms. Lee's anticipated testimony, the extreme sanction of excluding Moison's evidence in his defense is unconstitutional. *See Taylor*, 484 U.S. at 414-15. Under the circumstances of this case, the trial court erred by imposing the drastic sanction of exclusion rather

---

[7] Moison reasonably considered "the place" of the alleged crimes to be Lee's address, rather than a particular location within a room at that address. Ordinarily, an order directing the Commonwealth to provide a bill of particulars identifying "the place" of the alleged crime would be satisfied by providing the specific address where the crime was allegedly committed. *See Watts v. Commonwealth*, 129 Va. 781, 783 (1921). Therefore, it is reasonable for a defendant to consider himself to have been at "the place" of the alleged crime when he was at the specific address where the crime allegedly occurred at the time of the alleged crime.

than granting the Commonwealth alternative relief, such as a continuance or a mistrial to enable the Commonwealth to investigate Moison's "alibi."

## IV. CONCLUSION

The trial court's error in excluding evidence in Moison's defense is not harmless because it does not plainly appear from the record and the evidence that Moison had a fair trial on the merits and that substantial justice has been reached. *See* Code § 8.01-678. On this record, it is not clear beyond a reasonable doubt that the jury would have convicted Moison of any of the charged offenses absent the unconstitutional exclusion of material evidence in his defense. *See Wise v. Commonwealth*, 6 Va. App. 178, 187 (1988) (noting that to be harmless, constitutional error must be harmless beyond a reasonable doubt (citing *Chapman v. California*, 386 U.S. 18, 23-24 (1967))); *Commonwealth v. White*, 293 Va. 411, 421-22 (2017) (The proper inquiry for determining whether constitutional error was harmless is "whether the [factfinder] *would have* returned the same verdict absent the error." (alteration and emphasis in original) (quoting *Washington v. Recuenco*, 548 U.S. 212, 221 (2006))). Ms. Lee's testimony, if believed, could undermine the credibility of Moison's daughters' testimony about all of the alleged offenses. Thus, the trial court's error in excluding Ms. Lee's testimony was not harmless. Therefore, I would reverse the convictions and remand for retrial if the Commonwealth be so advised.[8]

For the foregoing reasons, I respectfully dissent.

---

[8] I would reverse and remand rather than dismiss because the evidence admitted at trial is sufficient to sustain the convictions, as the majority holds. I also agree with the majority that binding precedent precludes this Court from finding that the trial court erred in instructing the jury that it could infer that a person intends the natural and probable consequences of his acts.